602 So.2d 48 (1992)
Leonard Joe TAYLOR, Plaintiff-Appellee,
v.
LOUISIANA-PACIFIC CORPORATION, Defendant-Appellant.
No. 90-1375.
Court of Appeal of Louisiana, Third Circuit.
May 20, 1992.
Rehearing Denied July 13, 1992.
Gold, Weems, Bruser, Sues & Rundell, Peggy St. John, Alexandria, for defendant/appellant.
C. Richard Oren, New Orleans, John Bennett, Marksville, for plaintiff/appellee.
*49 Before DOMENGEAUX, C.J., and COREIL[*] and SALOOM[*], JJ.
JOSEPH E. COREIL, Judge Pro Tem.
In this worker's compensation action, the defendant employer, Louisiana-Pacific Corporation, appeals a judgment finding the claimant, Leonard Joe Taylor, temporarily totally disabled and entitled to worker's compensation benefits and to supplemental earnings benefits. For the reasons assigned below, we affirm as amended.

FACTS
During December of 1986, Leonard Joe Taylor was working for Louisiana-Pacific Corporation as a relief man, operating various pieces of machinery while the regular operators took breaks. On December 16, 1986, Taylor suffered a compensable injury when a machine he was operating ejected a piece of lumber. The lumber struck Taylor, fractured four ribs, punctured a lung, and damaged his spleen and liver. Taylor was taken to the Rapides General Hospital emergency room in Alexandria, Louisiana. Dr. Phillip Lindsay, a general and vascular surgeon, was called in to perform surgery.
As a result, Taylor was hospitalized for twenty-one days. Louisiana-Pacific began paying temporary total disability benefits to Taylor.
After Taylor's discharge, he continued follow-up visits with Dr. Lindsay. On January 29, 1987, Taylor was still complaining to Dr. Lindsay of pain in his right lower chest wall. According to Dr. Lindsay, his pain was "not unexpected." On March 10, 1987, Dr. Lindsay noted that Taylor was "a little reticent to move about," but advised Taylor to try to get back to some normal physical activity, avoiding contact sports and situations. On April 9, Taylor still reported soreness in his chest, so Dr. Lindsay ordered x-rays and blood work. The x-rays showed some scarring which, according to Dr. Lindsay, was expected, but should not have caused Taylor any real trouble. The results of the blood work were normal.
Also, during that visit, Taylor complained of back pain and Dr. Lindsay referred him to an orthopedist, Dr. Donovan Perdue. Dr. Perdue examined Taylor and took x-rays on May 11, 1987. It was his conclusion that Taylor suffered from a back strain. He advised Taylor that the pain would probably persist for a while, but that nothing needed to be done from an orthopedic standpoint. Dr. Perdue found nothing that would require active on-going orthopedic treatment and believed Taylor was capable of performing light duty work. Dr. Perdue's report also indicates that on May 12, 1987, Taylor called his office and stated that he did not get the medication which was prescribed, and would like to seek another opinion. No evidence was produced showing Taylor sought another opinion.
On June 17, 1987, Taylor returned to light duty work for Louisiana-Pacific. He did clean-up work which required him to use a broom and a shovel to scoop up sawdust on the premises. Because of the pain caused by the bending and lifting, Louisiana-Pacific gave Taylor another light duty position. This position involved measuring the length of logs as they roll on a type of conveyor chain. His rate of pay remained unchanged.
On August 5, 1987, Taylor, experiencing pain, left work to seek medical attention at Huey P. Long Memorial Hospital in Pineville, Louisiana. He obtained a work excuse from Dr. Makowski of Huey P. Long Memorial Hospital, which removed him from work status from August 11, 1987, through September 1, 1987. Louisiana-Pacific then set up another appointment for Taylor with Dr. Perdue, but Taylor failed to keep the appointment.
Taylor did not return to Louisiana-Pacific and has not worked for Louisiana-Pacific since August 5, 1987. The only doctor he saw after September 1, 1987, was Dr. Lindsay, his initial treating physician, on September 14, 1987. In his final report dated *50 March 18, 1988, to Gary Ivy, a representative of Louisiana-Pacific Corp., Dr. Lindsay notes that Taylor complained of pains in the groin and the right back, especially when he did any bending and lifting. Dr. Lindsay stated that Taylor:
"had tried to work scaling logs. He told me this required a lot of bending and that he suffered during the day with the pain.... Unfortunately, Mr. Taylor claims that he cannot do this work and this is a difficult thin[g] to measure. At any rate, I honestly do not see any physical reason the patient was not able to do the work as you described it."
In the same report, he noted that he had approved Taylor for unemployment benefits. As a result of this report, Louisiana-Pacific did not pay any further weekly compensation benefits to Taylor, despite his requests to reinstate the compensation benefits.
Taylor drew unemployment compensation benefits from August 30, 1987 to March of 1988. After unemployment benefits ran out, he worked at several jobs during the period between March of 1988 and the date of trial, earning as much as $6.78 per hour and as little as $3.75 per hour.
Taylor filed this suit for worker's compensation benefits on January 20, 1988. In his petition, Taylor alleged that he was entitled to recovery of benefits as provided in La.R.S. 23:1221(2) for total and permanent disability benefits; and, in the alternative, that he is entitled to recover permanent partial disability benefits as set forth in La.R.S. 23:1221(4) or; in the further alternative, supplemental earnings benefits as provided for in La.R.S. 23:1221(3).

ACTION OF THE TRIAL COURT
Trial on the merits was held on May 15, 1990, and the trial court rendered judgment in favor of Taylor as follows:
"IT IS ORDERED, ADJUDGED AND DECREED that:
1. The plaintiff, Leonard Joe Taylor, is temporarily totally disabled from performing the type of work in which he was customarily engaged and is entitled to worker's compensation benefits from August 11, 1987 to date, with legal interest on each payment from the due date until paid.
2. The plaintiff, Leonard Joe Taylor, is entitled to recover supplemental earnings benefits for the periods in which he was subsequently employed with the exception of the period of his employment at Lock & Dam No. 3. Said supplemental earnings benefits are to be calculated at 74% of the difference between the average monthly wage at the time of injury and Mr. Taylor's average monthly wages earned at subsequent jobs. The average monthly wage is to be computed at 4.3 times wages as defined in R.S. 23:1021(10). This right to supplemental earnings benefits shall continue from January 1988 for 520 weeks and are awarded with interest thereon from the due date until paid.
3. The defendant, Louisiana Pacific Corporation, is hereby granted deductions from the supplemental earnings benefits as provided under R.S. 23:1223(B).
4. The plaintiff, Leonard Joe Taylor, is not entitled to temporary total disability or supplemental earnings benefits for any week in which he has, or shall receive unemployment benefits.
5. The claim of the plaintiff, Leonard Joe Taylor, for vocational rehabilitation benefits is denied."

ASSIGNMENTS OF ERROR
Louisiana-Pacific appeals, contending, among other things, that the trial court erred in (1) finding Taylor temporarily totally disabled because he could not perform the type of work in which he was customarily engaged and; (2) awarding supplemental earnings benefits past the period he was employed earning more than his pre-injury wages.

DISCUSSION

I. TEMPORARY TOTAL DISABILITY
The trial court found Taylor temporarily totally disabled under La.R.S. 23:1221(1) as *51 it provided at the time of the injury. At the time of Taylor's injury, temporary total disability was defined as inability "to engage in any self-employment or gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience..."[1].

Legal Principles
The plaintiff in worker's compensation actions has a burden to prove that the injury has prevented him from engaging in any self-employment or gainful occupation, regardless of whether it was of the same type of employment in which he was previously engaged. Lewis v. Wal-Mart Stores, Inc., 525 So.2d 93 (La.App. 3 Cir. 1988), writ denied, 525 So.2d 1047 (La. 1988). The plaintiff must meet this burden of proof to a legal certainty and by a preponderance of the evidence. Sepulvado v. Willamette Industries, 459 So.2d 1342 (La.App. 3 Cir.1984)[2].
The issue of disability is to be determined by the totality of the evidence, including both lay and medical testimony. Augustine v. Courtney Construction Co. of Alexandria, Inc., 405 So.2d 579 (La.App. 3 Cir.1981), writ denied, 407 So.2d 735 (La. 1981). On appellate review, the trial court's findings of work-connected disability are entitled to great weight. They should not be disturbed where there is evidence before the trier of fact which, upon the latter's reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's findings, unless clearly wrong. The reviewing court should not disturb reasonable inferences of fact by the trial court, even though the reviewing court is of the opinion that other evaluations and inferences are as reasonable. Crump v. Hartford Acc. & Indemnity Co., 367 So.2d 300 (La.1979).

Analysis
Defendant contends that the trial court erred in awarding temporary total disability benefits from August 11, 1987, to the date when the trial court awarded the benefits using the standard that plaintiff was "temporarily totally disabled from performing the type of work in which he was customarily engaged" (emphasis added). We agree.
The standard under La.R.S. 23:1221(1) requires that Taylor's injury prevented him from engaging in any self-employment or gainful occupation, regardless of whether employment was the same type in which claimant was engaged at the time the injury was sustained.
The record contains the testimony of two physicians, Dr. Lindsay, Taylor's initial treating physician, who last saw Taylor on September 14, 1987, and Dr. Perdue, the orthopedic surgeon, who examined Taylor only once. The date of that examination was May 11, 1987. Both physicians were of the opinion that Taylor could do light work duties, with restrictions on heavy lifting and constant bending.
Taylor did not present evidence that he had sought medical attention for his disability after September 14, 1987. It is clear that Taylor sustained a serious injury in December of 1986 and had some degree of pain which, considering Taylor's testimony, appreciably limited the type of work available to him or substantially hindered his ability to work, at least until March of 1988.
However, after that date, the record clearly establishes that Taylor returned to some form of employment. In March, 1988, and up until the time of trial, Taylor was employed. He worked at the Alexandria Golf Course engaging in clean up work; at Cuco's Restaurant in Alexandria as a cook; at a Texaco service station and convenience store as a cashier; at Lock & Dam # 3 in Lena, Louisiana, washing and *52 rinsing concrete; at Godfather's Pizza as a driver; and finally, at Tuboscope in Houston, Texas, rolling pipe onto racks. At the time of trial, he was still employed with Tuboscope.
There is no evidence of a disability past that date. Even of his own admission, he is able to work at jobs that require some lifting and bending. Additionally, there is no evidence that Taylor has missed any work attributable to the injury. Nor is there evidence to suggest that gaps in his employment from March, 1988 to the present were due to the injury.
Mindful of our duty as a reviewing court, we have carefully considered the evidence in its totality, and we find this evidence sufficient to rebut the plaintiff's showing of temporary total disability beyond March 1, 1988, the date Taylor began to work for Alexandria Country Club.
Therefore, we find that the applicable legal principles were overlooked and hold that Taylor has proven his entitlement to temporary total disability benefits only through March 1, 1988. As such, we affirm the award of temporary total disability benefits but amend the judgment to reflect his entitlement only for the period from August 5, 1987, through March 1, 1988.

II. SUPPLEMENTAL EARNINGS BENEFITS
The trial court awarded Taylor recovery of supplemental earnings benefits, excluding the period he was employed at Lock & Dam # 3, such right to the benefits to continue from January, 1988 for 520 weeks.

Legal Principles
To qualify for supplemental earnings benefits, a claimant must prove by a preponderance of the evidence that a work-related injury resulted in his inability to earn wages equal to 90% or more of his wages at the time of injury. Clark v. Welex, a Halliburton Co., 517 So.2d 1186 (La.App. 3 Cir.1987), writ denied, 521 So.2d 1170 (La.1988). If the employee is not employed or self-employed or is earning less than he is able to earn, the employer must then show the employee is physically capable of performing employment which is offered or available. La.R.S. 23:1221(3)(c)(i). If the employer satisfies its burden of showing that the supplemental earnings benefits claimant was physically capable of work and that work was offered or available, claimant must show, by clear and convincing evidence, unaided by any presumption of disability, that he is unable to perform employment offered or available solely as a consequence of substantial pain. Lubom v. L.J. Earnest, Inc., 579 So.2d 1174 (La.App. 2 Cir.1991); La.R.S. 23:1221(3)(c)(ii).

Analysis
Applying the above legal principles to the facts of the present case, we agree with the defendant that Taylor is not entitled to supplemental earnings benefits beyond the period he was employed at Lock & Dam # 3. We find that defendant has met its burden of La.R.S. 23:1221(3)(c)(i). Although Taylor is presently earning less, he is physically capable of work, and work was offered and accepted by him in which he actually earned more than he earned while employed by Louisiana-Pacific Corporation. Taylor earned $6.82 per hour while employed at Lock & Dam # 3. This wage was nearly $2.00 per hour over his wage at Louisiana-Pacific.
On the other hand, Taylor has not shown that his inability to earn wages equal to 90% or more of his wages at the time of injury is due to the injury of December, 1986. Furthermore, Taylor has not shown that he is unable to perform the employment offered or available solely as a consequence of substantial pain. La.R.S. 23:1221(3)(c)(ii). In fact, by his own admission, Taylor was fired from Lock & Dam # 3 because he reported for work intoxicated. Louisiana-Pacific is not required to pay for Taylor's loss of this employment where he was earning more than he did while working for Louisiana-Pacific. The evidence is sufficient to show that Taylor can earn at least 90% of his pre-accident wages of $4.62 per hour. As we stated earlier in this opinion, considering the sparse evidence produced as to Taylor's continuing disability, we are compelled to *53 conclude the trial court was clearly wrong in its determination that Taylor was entitled to an award of supplemental earnings benefits for the period past his employment with Lock & Dam # 3.

CONCLUSION
In conclusion, we have determined that the trial court was clearly wrong in its determination that Taylor was disabled past March 1, 1988. We have concluded that the trial court improperly awarded supplemental earnings benefits to Taylor beyond the time he was employed by Lock & Dam # 3. In view of the dispositive nature of these issues, we pretermit any discussion of the other issues raised by defendant on appeal.
Paragraphs 1 and 2 of the judgment of the trial court will therefore be amended consistent with this opinion. All other aspects of the judgment are affirmed. Costs of this appeal are assessed 1/3 to plaintiff, Leonard Joe Taylor, and 2/3 to defendant, Louisiana-Pacific Corporation.
AFFIRMED, AS AMENDED.
NOTES
[*] HONORABLE JOSEPH E. COREIL, Retired, and HONORABLE KALISTE SALOOM, JR. participated in this decision by appointment of the Louisiana Supreme Court as Judges Pro Tempore.
[1] This article was amended by Acts 1988, No. 938, § 1, eff. January 1, 1989, and Acts 1989, No. 454, § 6, eff. January 1, 1990.
[2] That burden has been heightened by the legislature, in a subsequent amendment to the statute, to clear and convincing.