631 So.2d 106 (1994)
Rodney R. COOLMAN, Plaintiff-Appellant,
v.
GLOBAL TORQUE TURN, INC., Defendant-Appellee.
No. 93-664.
Court of Appeal of Louisiana, Third Circuit.
February 2, 1994.
Adras Paul Endom, Andre F. Toce, Lafayette, for Rodney R. Coolman.
Philip E. Roberts, Lafayette, for Global Torque Turn, Inc.
Before GUIDRY and YELVERTON, JJ., and BERTRAND, J. Pro Tem.
GUIDRY, Judge.
Plaintiff, Rodney Coolman, was involved in an automobile accident while in the course and scope of his employment with Global Torque Turn, Inc. The accident was entirely the fault of Ethel Bethard, a third party. He appeals from the Office of Worker's Compensation Administration (OWCA) hearing officer's judgment dismissing his suit as premature against defendants, Global and Aetna Casualty and Surety Company (Global's worker's compensation insurer). The hearing officer ruled that, because Coolman failed to obtain written approval from Global and Aetna of a compromise with Bethard and her insurer, he forfeited his right to future compensation pursuant to La.R.S. 23:1102(B). Because Coolman did not utilize the "buy back" provision of the statute prior to filing this claim for compensation, the hearing officer concluded that his claim was premature.
*107 The compromise was executed between Coolman and Bethard prior to the institution by Coolman of litigation against Bethard. The issue presented on appeal is whether the § 1102(B) written approval of compromise requirement applies only to situations in which the employee previously filed suit against the third party tortfeasor or as well to compromises executed prior to the filing of a tort suit. For the following reasons, we conclude that the requirement that the employee obtain employer and insurer written approval applies to all compromises, those executed prior to the filing of suit against the third party tortfeasor and those executed thereafter. Accordingly, we affirm.

FACTS
While running a business errand in Lafayette for his employer at approximately 11:30 a.m. on May 3, 1991, Coolman's automobile was rear-ended by an automobile driven by Bethard. Coolman's back was injured in the accident. Global and Aetna initially denied coverage for worker's compensation benefits and medical expenses on the basis that, in their view, Coolman was not in the course and scope of his employment with Global at the time of the accident. The defendants' position was that Coolman was on his lunch hour and not involved in work related activities.
Coolman was examined by several medical doctors and was diagnosed as having a herniated lumbar nucleus pulposus. On October 1, 1991, Drs. Stuart Phillips and Michael Aldinolfi performed an anterior lumbar fusion on Coolman at St. Charles General Hospital in New Orleans.
On that same date, Bethard's liability insurer, Casualty Reciprocal Exchange (CRE), through Kincel Claims Service, offered to pay Coolman the $25,000 limit of Bethard's policy in exchange for a full and complete release of CRE and Bethard. This offer was embodied in a letter from Roger Leger, Kincel's agent, to Coolman's attorney. By letter to Leger dated October 7, 1991, Coolman's attorney accepted the settlement offer contingent upon Bethard's execution of certain affidavits and upon confirmation that uninsured motorist coverage was available to Coolman. On January 22, 1992, CRE issued drafts for $25,000 for bodily injury and $227.80 for property damage to Coolman and his attorney. Coolman and his attorney received the drafts on January 24, 1992.
Soon thereafter, Aetna decided that Coolman was in the course and scope of employment at the time of the accident. On February 12, 1992, Aetna issued a $9,024 check to Coolman representing all past due temporary total disability benefits. Aetna also began to make regular weekly compensation benefit payments. On April 8, 1992, Aetna issued a $41,079.21 check to Coolman and his attorney for his medical expenses and other related expenses incurred as a result of the work related injury.
On April 23, 1992, Coolman executed a document entitled "Receipt and Release" in authentic form, i.e., in the presence of a notary public and two witnesses. In the document, Coolman acknowledged receipt of the $25,000 paid to him by CRE and, in exchange, released Bethard, her husband, and CRE from all possible legal claims arising from the May 31, 1991 accident. Coolman did not obtain either Global's or Aetna's written approval prior to or at the time of the compromise.
Aetna continued to pay Coolman temporary total disability benefits until May 27, 1992 when it first learned of the aforementioned compromise agreement. By letter dated June 10, 1992, Aetna informed Coolman's attorney of the cessation of payments and the reason therefor, Coolman's failure to obtain Aetna's approval of the compromise. Additionally, Aetna offered to reinstate Coolman's benefits if he paid Aetna 50% of the amount recovered from Bethard and CRE in compliance with § 1102(B).
On September 21, 1992, Coolman filed a disputed claim for compensation with the OWCA. In response, Global and Aetna filed an exception of prematurity. Therein, defendants urged that Coolman forfeited his right to future compensation by failing to obtain their written approval of the settlement. Thus, defendants argued that his suit was premature because of his failure to tender 50% of his third party settlement to Aetna as *108 provided in § 1102(B). Defendants asserted that his right to future compensation was contingent on this payment.
After a February 25, 1993 hearing, the hearing officer sustained defendants' exception. On March 11, 1993, the hearing officer signed a judgment sustaining the exception of prematurity and dismissing Coolman's claim without prejudice. From this judgment, Coolman appeals and specifies as error the hearing officer's application of the § 1102(B) compromise approval provision to the circumstances of this case. He contends that the compromise approval requirement only applies when the settlement is entered into after suit has been filed against the third party tortfeasor.

OPINION
It is undisputed that neither Coolman or his attorney sought or obtained the written approval of Global and Aetna prior to or at the time of executing the settlement with Bethard. The issue is whether he was required by § 1102(B) to obtain written approval of the compromise from Global and Aetna. Stated another way, does the requirement of written approval from the employer and insurer apply only when the compromise is executed after the filing of a suit against the third party tortfeasor?
Section 1102(B) of the Worker's Compensation Law provides as follows:
B. If a compromise with such third person is made by the employee or his dependents, the employer or insurer shall be liable to the employee or his dependents for any benefits under this Chapter which are in excess of the full amount paid by such third person, only after the employer or the insurer receives a dollar for dollar credit against the full amount paid in compromise, less attorney fees and costs paid by the employee in prosecution of the third party claim and only if written approval of such compromise is obtained from the employer or insurer by the employee or his dependent, at the time of or prior to such compromise. Written approval of the compromise must be obtained from the employer if the employer is selfinsured, either in whole or in part. If the employee or his dependent fails to notify the employer or insurer of the suit against the third person or fails to obtain written approval of the compromise from the employer and insurer at the time of or prior to such compromise, the employee or his dependent shall forfeit the right to future compensation, including medical expenses. Notwithstanding the failure of the employer to approve such compromise, the employee's or dependent's right to future compensation in excess of the amount recovered from the compromise shall be reserved upon payment to the employer or insurer of the total amount of compensation benefits, and medical benefits, previously paid to or on behalf of the employee, exclusive of attorney fees arising out of the compromise; except in no event shall the amount paid to the employer or insurer exceed fifty percent of the total amount recovered from the compromise. Such reservation shall only apply after the employer or insurer receives a dollar for dollar credit against the full amount paid in compromise, less attorney fees and costs paid by the employee in prosecution of the third party claim. (Emphasis ours)
The specific issue presented for our determination has not been addressed in our jurisprudence. The particular sentence at issue provides for forfeiture of the right to future compensation when the employee (1) fails to notify the employer or insurer of the suit against the third person, or (2) fails to obtain written approval of the compromise from the employer and insurer at the time of or prior to such compromise. The legislature's use of the disjunctive connector "or" clearly indicates that such forfeiture of rights occurs when either one of the two contingencies occurs.
Coolman argues that the second contingency, failure to obtain written approval of a compromise, contemplates only compromises executed after the employee has filed suit against the third person. We disagree with this interpretation of the statute. Although the legislature has been criticized for its "inept draftsmanship" in the 1983 amendments to the Worker's Compensation Law which enacted this third party compromise *109 approval scheme (See Faught v. Ryder/P*I*E Nationwide, Inc., 543 So.2d 918 (La.App. 1st Cir.1989), writ denied, 545 So.2d 1040 (La.1989), citing W. Malone & A. Johnson, 14 Louisiana Civil Law Treatise, Worker's Compensation Law and Practice, § 373 (2d ed. Supp.1988)), it is clear that the law contemplates employer and insurer written approval of both pre-suit and post-suit compromises. The phrase "written approval of the compromise" contains no additional qualifying language indicating that only compromises of filed suits are contemplated. A clear reading of the statute leads to the conclusion that the legislature reasonably contemplated that employers and insurers would have the right to approve or disapprove all third party settlements. This right is especially valuable to employers and insurers when one considers the possible effect such compromises may have on their subrogation rights. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La.C.C. art. 9. We are bound by this general principle of statutory interpretation to apply § 1102(B) as clearly written, requiring employer and insurer written approval of all compromises as between the employee and a third party tortfeasor.
The compromise in this case was reduced to writing in authentic form on April 23, 1992, over two months after Aetna paid Coolman for past due benefits and began paying benefits on a weekly basis. It was also executed fifteen days after Aetna paid Coolman and his attorney for his medical and related expenses.
Coolman contends that, although the compromise is dated April 23, 1992, it was actually agreed upon much earlier through correspondence in October 1991 or, alternatively, the issuance of drafts by CRE in January, 1992. He argues that he was forced by Aetna's refusal to pay benefits and medical expenses to seek financial recompense from these other sources, Bethard and her insurer. Coolman further asserts that it would have been pointless to require him to obtain written approval of the pre-suit third party compromise from Global and Aetna at a time when they were denying worker's compensation liability for his injuries.
The Louisiana Civil Code defines a compromise, in pertinent part, as "an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent ...". La.C.C. art. 3071. (emphasis ours). Additionally, the compromise must be either reduced to writing or recited in open court and capable of being transcribed. Id. When the law requires a contract to be written, it may not be proved by testimony or presumption, unless it has been destroyed, lost or stolen. La.C.C. art. 1832.
Our review of the record indicates that, although settlement negotiations were ongoing prior to Aetna's recognition of its liability, the compromise was not perfected until it was reduced to writing after Aetna admitted liability and paid Coolman. The October 7, 1991 correspondence from Coolman's attorney to Kincel Claims Service clearly makes Coolman's acceptance of CRE's settlement offer conditional on two events, the execution of affidavits by the Bethards and the confirmation of the availability of uninsured motorist coverage. The affidavits were thereafter executed on November 25, 1991 and December 17, 1991. Apparently, the second condition was satisfied prior to January 22, 1992, the date on which CRE's attorney forwarded the drafts and the "Receipt and Release" to Coolman's attorney. The date upon which the drafts were cashed is unclear from the record. The written compromise was not executed by Coolman until April 23, 1992. No written approval for the compromise was obtained from Global and Aetna at any time during negotiations up to the date of execution of the written compromise.
An authentic act constitutes full proof of the agreement it contains as against the parties. La.C.C. art. 1835. Although a compromise is not required to be in authentic form, when, as in this case, it is in authentic form, testimonial or other evidence may not be admitted to negate or vary the contents of the act, unless to prove a vice of consent, simulation or that the written act was modified *110 by a subsequent and valid oral agreement. La.C.C. art. 1848; Lamartiniere v. Lamartiniere, 520 So.2d 828 (La.App. 3rd Cir.1987). None of the exceptions are existent in this case. Thus, we cannot consider evidence which is extrinsic from the actual document that would possibly alter its substantive contents.
Included within this "self-proving" characteristic of authentic acts is the date upon which the act was executed. Clearly, the compromise in the case sub judice was executed in authentic form on April 23, 1992 after Aetna admitted liability and issued checks to Coolman. By failing to obtain the written approval of Global and Aetna, Coolman forfeited his right to future compensation benefits. He could have then reinstated his right by tendering 50% of his net recovery from Bethard to Aetna. Having failed to do so prior to filing this suit against Global and Aetna, his suit is premature.
For these reasons, the judgment of the hearing officer in favor of Global and Aetna dismissing Coolman's claim as premature is affirmed. Costs of this appeal are assessed to plaintiff-appellant, Rodney Coolman.
AFFIRMED.