I2CARTER, Judge.
This is an appeal from a judgment of the Office of Worker’s Compensation.

FACTS

On June 18, 1992, plaintiff, Carl Minor, was injured during the course and scope of his employment as a delivery driver for Frank’s Door and Building Supply Company (Frank’s Door). While on his delivery route, plaintiff stopped at a convenience store to obtain a drink of water. After exiting the delivery truck, plaintiff was struck by a backing vehicle, causing him to sustain injuries.[1] Frank’s Door’s worker’s compensation carrier subsequently paid plaintiff $9,203.62 in compensation and medical benefits.
Plaintiff made a claim against the negligent third party, David Koenig, and his automobile liability insurer, State Farm Insurance Company (State Farm). Plaintiff subsequently settled the third party claim with State Farm for the policy limits of $25,000.00. Frank’s Door approved and consented to the settlement and received reimbursement of $9,203.62, the total amount of benefits it had paid on behalf of plaintiff. The remaining amount ($25,000.00 less $9,203.62) was paid to plaintiff and his attorney.[2]
It was later determined that the metal screws, which had been placed in plaintiffs knee during the surgery, required removal. Plaintiff made a request for pre-certification with Frank’s Door’s compensation carrier, which refused to authorize payment for the procedure. On November 29, 1993, plaintiff *739 filed with the Office of Worker’s Compensation a disputed claim for compensation, contending that he was entitled to such medical treatment and that Frank’s Door was responsible for payment for such medical treatment. Plaintiff also submitted medical reports indicating the need for surgical removal of the screws.
UOn April 15, 1994, a hearing was held in this matter. In its memorandum to the hearing officer, Frank’s Door argued that plaintiff was required to exhaust all sums he personally received in the settlement prior to the compensation carrier’s responsibility for any future compensation or medical benefits. Stated another way, Frank’s Door argued that it was entitled to a credit for the amount plaintiff netted from the settlement proceeds prior to its liability for any future worker’s compensation or medical benefits. The hearing officer, however, determined that plaintiff was required to exhaust only 50% of the total amount he received in the settlement of his third party tort claim, exclusive of attorney’s fees and costs, before the employer and/or worker’s compensation insurer was liable for future compensation benefits. On May 6, 1994, in accordance with this ruling, the hearing officer signed a written judgment.
Frank’s Door appealed the judgment, assigning as error the hearing officer’s ruling that an employer, who consents to an employee’s settlement with a third party tort-feasor, is only entitled to a credit of only 50% of the amount actually netted by the employee from the lump sum settlement against any future compensation obligation.

LSA-R.S. 23:1102 B

The resolution of this litigation turns on the interpretation of LSA-R.S. 23:1102 B, which provides as follows:
If a compromise with such third person is made by the employee or his dependents, the employer or insurer shall be liable to the employee or his dependents for any benefits under this Chapter which are in excess of the full amount paid by such third person, only after the employer or insurer receives a dollar for dollar credit against the full amount paid in compromise, less attorney fees and costs paid by the employee in prosecution of the third party claim and only if written approval of such compromise is obtained from the employer or insurer by the employee or his dependent, at the time of or prior to such compromise. Written approval of the compromise must be obtained from the employer if the employer is self-insured, either in whole or in part. If the employee or his dependent fails to notify the employer or insurer of the suit against the third person or fails to obtain written approval of the compromise from the employer and insurer at the time of or prior to such compromise, the employee or his dependent shall forfeit the right to future compensation, including medical expenses. Notwithstanding the failure of the employer to approve such compromise, the employee’s or dependent’s right to future compensation in |4excess of the amount recovered from the compromise shall be reserved upon payment to the employer or insurer of the total amount of compensation benefits, and medical benefits, previously paid to or on behalf of the employee, exclusive of attorney fees arising out of the compromise; except in no event shall the amount paid to the employer or insurer exceed fifty percent of the total amount recovered from the compromise. Such reservation shall only apply after the employer or insurer receives a dollar for dollar credit against the full amount paid in compromise, less attorney fees and costs paid by the employee in prosecution of the third party claim.
In the instant ease, Frank’s Door consented to and approved the settlement with State Farm. Therefore, we are concerned only with the first sentence of LSA-R.S. 23:1102 B. Under that provision, when an employer consents to a third party settlement, the employer remains liable for compensation benefits in excess of “the full amount paid by such third person.” This means that, after the employer or insurer receives a “dollar for dollar” credit against the full amount paid in compromise, less attorney’s fees and costs paid by the employee in prosecution of the third party claim, the employer or insurer is liable to the employee *740 for future worker’s compensation and medical benefits. Hence, the basis for the credit is the net sum realized by the employee in the settlement.
Accordingly, under the clear wording of the applicable portion of LSA-R.S. 23:1102 B, Frank’s Door is entitled to a dollar for dollar credit for the full amount plaintiff netted from the settlement with State Farm. Therefore, Frank’s Door is not responsible to plaintiff for future compensation or medical expenses until the net amount plaintiff received in the third party settlement ($25,-000.00 less attorney’s fees and costs as well as the $9,208.63 in compensation and medical expenses previously paid) has been credited toward future medical expenses and other compensation benefits to which plaintiff is entitled under the Worker’s Compensation Law. The hearing officer was clearly wrong in holding otherwise.
On appeal, plaintiff argues that the hearing officer was correct in her interpretation of LSA-R.S. 23:1102 B and that the statute entitles him to future compensation and medical benefits as long as Frank’s Door receives a credit of at least 50% of the amount he received in the third party settlement, exclusive of attorney’s fees and costs. Plaintiff states:
|5To come to any other conclusion would mandate that individuals who do not notify the compensation carrier or employer of a third party claim and who make no effort to protect the employer’s subrogation rights receive greater benefits under the Worker’s Compensation Act that (sic) those individuals who act in good faith to protect the employer/comp, carrier’s interest.
However, plaintiff clearly misinterprets the language in LSA-R.S. 23:1102 B. The portion of the statute on which plaintiff relies is applicable only when the employee fails to obtain the consent and/or approval of the employer or worker’s compensation carrier prior to settlement of his third party claim. Under those provisions, if the employee fails to notify his employer or get his employer’s approval for the settlement, the employee forfeits his right to future compensation benefits. However, there is an escape for the employee who runs afoul of this provision. The employee is permitted to “buy back” the right to future compensation by paying the employer or insurer “the total amount of compensation benefits, and medical benefits, previously paid to or on behalf of the employee, exclusive of attorney fees arising out of the compromise.” This “buy back” is subject to a ceiling in that the amount paid to the employer or insurer cannot exceed “fifty percent of the total amount recovered from the compromise.” See Malone and Johnson, Workers’ Compensation Law and Practice, 3rd, § 373, pp. 310-311 (1994) (14 Louisiana Civil Law Treatise). In addition to reimbursing the employer for compensation previously paid to the employee, the employer is entitled to a dollar for dollar credit for the difference between the net settlement proceeds and the amount paid to the employer.
Thus, plaintiff’s assertion that individuals who do not notify the compensation carrier or employer of a third party claim and who make no effort to protect the employer’s subrogation rights receive greater benefits under the Worker’s Compensation Law than those individuals who act in good faith to protect the employer/compensation carrier’s interest is not well-founded. Regardless of whether the employee notifies the employer and obtains the employer’s approval prior to the settlement or the employee fails to obtain his employer’s consent, before the employer is liable for future compensation or medical benefits, the employee must exhaust his net settlement proceeds. Clearly, the employee who notifies the employer prior to settlement is no | (¡worse off than the employee who fails to notify the employer prior to settlement. The law simply affords protection to those employees who fail to obtain prior consent so that they may recover their right to obtain future compensation benefits by complying with the provisions of LSA-R.S. 23:1102 B.

CONCLUSION

For the foregoing reasons, the judgment of the hearing officer is reversed. Frank’s Door is not responsible to plaintiff for future worker’s compensation benefits or medical expenses until those benefits and expenses exceed the net amount plaintiff received in *741 the third party settlement ($25,000.00 less attorney’s fees and costs as well as the $9,203.63 in compensation and medical expenses previously paid to the compensation insurer). Costs of this appeal are assessed against plaintiff.
REVERSED AND RENDERED.

. As a result of this work-related accident, plaintiff sustained a fracture of his left tibial tuberosity (knee), which required surgery. During the surgery, several small screws were placed in plaintiff's knee.

. From the record, it is unclear as to the net amount realized by plaintiff after the payment of costs and attorney's fees.