671 So.2d 425 (1995)
Scottie A. TRICHE
v.
REGIONAL ELECTRIC & CONSTRUCTION, INC.
No. 95 CA 0105.
Court of Appeal of Louisiana, First Circuit.
October 6, 1995.
*428 Keith J. Labat, Thibodaux, for Plaintiff/Appellee Scottie A. Triche.
David K. Johnson, Baton Rouge, for Defendant/Appellant, Regional Electric & Construction, Inc.
Before CARTER, PITCHER and CRAIN[1], JJ.
CARTER, Judge.
This is an appeal from a judgment of the Office of Worker's Compensation in an action for temporary total disability benefits.

FACTS
Prior to March 12, 1993, petitioner, Scottie A. Triche, was employed by defendant, Regional Electric and Construction, Inc. (Regional), as an electrician's helper. On that date, petitioner was in the course and scope of his employment with Regional and was operating a 1981 Dodge truck, owned by Regional, when the vehicle was struck from the rear by an automobile owned and operated by David Delaune. The Delaune vehicle was insured by Allstate Insurance Company (Allstate). As a result of this automobile accident, Triche sustained personal injuries.
Following the accident, Triche sought and received medical treatment for his injuries.
*429 The medical treatment was authorized and coordinated by Regional, but Regional did not pay for any of the medical treatment.[2] Nor did Regional pay Triche weekly worker's compensation. Gary Rebstock, the president of Regional, erroneously believed that, because Triche's injuries resulted from an automobile accident, the worker's compensation insurer did not have to be notified of Triche's accident or injuries. As a result, Regional did not notify its worker's compensation insurer, Louisiana Worker's Compensation Corporation (LWCC) of the injuries Triche sustained. Rebstock also assumed that the liability insurer of the tortfeasor would be responsible for all any and all losses Triche suffered, and Rebstock assisted Triche in submitting claims to Allstate for proper payment.
By August, 1993, payment for the medical expenses from Allstate was not forthcoming, and Triche made demand upon Regional for the commencement of worker's compensation benefits. On September 9, 1993, Triche filed a Disputed Claim for Compensation with the Office of Worker's Compensation, indicating that, because of the injuries he sustained in the automobile accident, he is unable to work. Triche also filed a petition, requesting worker's compensation benefits and statutory penalties for Regional's arbitrary and capricious failure to pay benefits.
On October 1, 1993, Triche entered into a "Restricted Release with Full Reservation of Rights" with Delaune and Allstate, settling his claim against them for $10,000.00.[3] Prior to settling his tort claim, Triche did not obtain the consent or approval of either Regional or LWCC.
Thereafter, on September 21, 1994, Triche's worker's compensation claim proceeded to a trial on the merits. The hearing officer rendered judgment in favor of Triche and against Regional and LWCC. The hearing officer determined that Triche was temporarily totally disabled and that he is entitled to two-thirds of his stipulated wages of $5.00 per hour for a forty-hour work week,[4] together with all past, present, and future medical expenses. The hearing officer also awarded Triche penalties in accordance with LSA-R.S. 23:1201 and attorney's fees of $2,500.00 in accordance with LSA-R.S. 23:1201.2. Regional and LWCC were cast for all costs.[5]
From this adverse judgment, Regional and LWCC appeal,[6] assigning the following specifications of error:
1. The trial court was manifestly erroneous in its determination that claimant was entitled to temporary total disability benefits and/or medical benefits.
2. Assuming claimant proved his entitlement to benefits, the trial court was manifestly erroneous in its determination that claimant did not forfeit his benefits due to the settlement of his claim with the tortfeasor without notice to or approval of the employer or its compensation insurer.
3. The trial court was manifestly erroneous in its assessment of penalties and attorney's fees.

ENTITLEMENT TO TEMPORARY TOTAL DISABILITY BENEFITS
In order to recover worker's compensation benefits, a claimant must show that *430 he received personal injury by accident arising out of and in the course and scope of his employment and that said injury necessitated medical treatment and/or rendered the employee disabled. Polk v. Babineaux's Plumbing, Inc., 628 So.2d 71, 74 (La.App. 3rd Cir.1993); Alfred v. Mid-South Machine, Inc., 594 So.2d 937, 939 (La.App. 3rd Cir. 1992). Pursuant to LSA-R.S. 23:1221(1)(c), a claimant has the burden of proving his temporary disability by clear and convincing evidence.[7]Penn v. Wal-Mart Stores, Inc., 93-1262, p. 3 (La.App. 3rd Cir. 6/15/94), 638 So.2d 1123, 1126, writ denied, 94-1835 (La. 10/28/94), 644 So.2d 651; Polk v. Babineaux's Plumbing, Inc., 628 So.2d at 74. In the absence of clear and convincing evidence that the employee is physically unable to engage in any employment, the claimant's demand for temporary total compensation benefits must fail. Tanner v. International Maintenance Corporation, 602 So.2d 1133, 1137 (La. App. 1st Cir.1992).
The issue of disability within the framework of the worker's compensation law is a legal rather than a purely medical determination. Pollock v. Louisiana Insurance Guaranty Association, 587 So.2d 823, 825 (La.App. 3rd Cir.1991). The issue of disability is determined with reference to the totality of the evidence, including both lay and medical testimony. Taylor v. Louisiana-Pacific Corporation, 602 So.2d 48, 51 (La.App. 3rd Cir.), writs denied, 606 So.2d 541, 542 (La.1992). The hearing officer is afforded great latitude in making credibility determinations and in weighing testimony. Harris v. Bronco Construction Company, 93-2139, p. 4 (La.App. 1st Cir. 10/7/94), 644 So.2d 805, 807, writ denied, 94-2740 (La. 1/6/95), 648 So.2d 931. The determination of an expert's credibility is a factual question subject to the manifest error/clearly wrong standard of review. Martin v. East Jefferson General Hospital, 582 So.2d 1272, 1277 (La.1991); Harris v. Bronco Construction Company, 644 So.2d at 807; Cheramie v. Horst, 93-1168, p. 5 (La.App. 1st Cir. 5/20/94), 637 So.2d 720, 723. Moreover, after weighing and evaluating all of the evidence, the fact finder is free to accept or reject the opinions expressed by the experts. Harris v. Bronco Construction Company, 644 So.2d at 807; Hoyt v. State Farm Mutual Automobile Insurance Company, 623 So.2d 651, 659 (La.App. 1st Cir.), writ denied, 629 So.2d 1179 (La.1993).
The question of whether the claimant is entitled to temporary total disability benefits is ultimately a question of fact, and the trial court's resolution of that issue may not be disturbed by the appellate court in the absence of manifest error or unless clearly wrong. Polk v. Babineaux's Plumbing, Inc., 628 So.2d at 74; Taylor v. Louisiana-Pacific Corporation, 602 So.2d at 51. Reasonable evaluations of credibility and reasonable inferences of fact will not be disturbed even though the appellate court may feel that its own evaluations and inferences are as reasonable. Shelton v. Wall, 614 So.2d 828, 832 (La.App. 2nd Cir.1993). When the trier of fact's findings are reasonable in light of the entire record, an appellate court may not reverse a choice between two permissible views of the evidence. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 883 (La.1993); Shelton v. Wall, 614 So.2d at 832. The issue to be resolved by the appellate court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one in view of the record in its entirety. Stobart v. State, Department of Transportation and Development, 617 *431 So.2d at 882; Harris v. Bronco Construction Company, 644 So.2d at 807.
In the instant case, the parties stipulated that Triche was in the course and scope of his employment with Regional when he was involved in the automobile accident with Delaune.
Scottie Triche testified that he injured his neck, left side, and back as a result of the automobile accident. He was taken by ambulance to the emergency room and was discharged shortly thereafter. Triche was then treated by numerous physicians, including orthopedic surgeons, chiropractors, and therapists. Triche testified that he has been unable to work since the date of the accident because he is in constant pain.
According to the medical reports and records introduced at the trial, Triche was transported from the accident site to St. Anne General Hospital, where x-rays of his cervical spine were taken. Thereafter, Triche was treated by Drs. Mike Marcello and S. Morris, who diagnosed a cervical strain and recommended physical therapy. Triche underwent physical therapy at South Lafourche Rehabilitation Services, the Behrman Chiropractic Clinic, and Family Chiropractic Center sporadically between March, 1993 and June, 1994. Triche also received treatment at Orthopaedic Associates for his complaints of pain. Dr. William H. Kinnard, an orthopedist with Houma Orthopedic Clinic, examined Triche in June, 1993. At that time, Dr. Kinnard determined that Triche showed tenderness in his neck and shoulder area and recommended that Triche undergo further diagnostic tests. Dr. Kinnard continued to treat Triche until August, 1993. An MRI of Triche's left shoulder was performed in June of 1993 at Terrebonne General Hospital, which revealed normal results.
Dr. Maria A. Palmer, a neurologist, testified via deposition. Dr. Palmer examined Triche on October 5, 1993, and observed tenderness of the left shoulder, limited lateral flexion on the right, muscle spasms in his neck and shoulder, and some sensory loss in his left hand. Dr. Palmer diagnosed that Triche suffered a cervical sprain, numbness secondary to thoracic outlet syndrome, and muscle contraction headaches. Dr. Palmer also reviewed Triche's CAT scan and MRI of the shoulder, which were both normal. On October 18, 1993, an EMG and a nerve conduction study was performed, which also yielded normal results. On June 28, 1994, Dr. Palmer determined that Triche's condition had not changed and recommended an MRI of the cervical region and psychiatric consultation, neither of which were ever performed. In her deposition testimony of July 14, 1994, Dr. Palmer opined that Triche was not able to return to work at any level, initially because of the considerable muscle spasm he suffered and currently because of his psychiatric condition. Focusing on Triche's cervical injury only, Dr. Palmer opined that Triche was not able to return to work.
Dr. A. Delmar Walker, Jr., an orthopedic surgeon, testified via deposition. Dr. Walker examined Triche on November 15, 1993. At that time, Triche complained of neck pain and stiffness, headaches, and pain in his shoulder and jaw. Triche also complained of numbness in the fingers of his left hand. Dr. Walker's examination was normal, and his review of the diagnostic tests revealed normal findings. Dr. Walker opined that Triche suffered a mild soft tissue injury of the neck or shoulder area, however, his examination suggested an impingement syndrome. In a December, 1993 report, Dr. Walker noted that he did not find any signs of radiculitis or objective signs indicating damage to the peripheral nerves of the upper extremities. At that time, Dr. Walker diagnosed Triche's injury as a cervical strain and expected complete recovery within three months. Dr. Walker related Triche's cervical injury to his automobile accident. In addition, Dr. Walker's December 1, 1993, report revealed that Triche could return to work at that time, even though, in his deposition testimony, Dr. Walker admitted that he was not aware of Triche's job-related duties.
Regional and LWCC argue on appeal that Triche was treated by numerous physicians and that none of these physicians found any objective finding to support Triche's complaints of pain. However, the record reveals that Triche sought and received medical treatment from various physicians totalling *432 $12,894.19. The numerous physicians and therapists who attended Triche observed tenderness in the cervical area and prescribed diagnostic tests to determine the etiology of his complaints. Moreover, Triche testified that he was unable, because of his pain, to return to work, which was corroborated by the testimony of Dr. Palmer. Apparently, the hearing officer determined that Triche established by clear and convincing evidence that he was unable to engage in any employment and that Regional and LWCC failed to reasonably controvert this evidence.
After reviewing the entire record in this matter, we find that there is a reasonable factual basis for the hearing officer's findings. We cannot we say that those findings are manifestly erroneous.

FORFEITURE OF RIGHT TO FUTURE COMPENSATION BENEFITS UNDER LSA-R.S. 23:1102 B
At all times pertinent hereto, LSA-R.S. 23:1102B provided as follows:
If a compromise with such third person is made by the employee or his dependents, the employer or insurer shall be liable to the employee or his dependents for any benefits under this Chapter which are in excess of the full amount paid by such third person, only after the employer or the insurer receives a dollar for dollar credit against the full amount paid in compromise, less attorney fees and costs paid by the employee in prosecution of the third party claim and only if written approval of such compromise is obtained from the employer or insurer by the employee or his dependent, at the time of or prior to such compromise. Written approval of the compromise must be obtained from the employer if the employer is self-insured, either in whole or in part.If the employee or his dependent fails to notify the employer or insurer of the suit against the third person or fails to obtain written approval of the compromise from the employer and insurer at the time of or prior to such compromise, the employee or his dependent shall forfeit the right to future compensation, including medical expenses. Notwithstanding the failure of the employer to approve such compromise, the employee's or dependent's right to future compensation in excess of the amount recovered from the compromise shall be reserved upon payment to the employer or insurer of the total amount of compensation benefits, and medical benefits, previously paid to or on behalf of the employee, exclusive of attorney fees arising out of the compromise; except in no event shall the amount paid to the employer or insurer exceed fifty percent of the total amount recovered from the compromise. Such reservation shall only apply after the employer or insurer receives a dollar for dollar credit against the full amount paid in compromise, less attorney fees and costs paid by the employee in prosecution of the third party claim. (emphasis added.)
Under the clear language of this statute, the employer or insurer is liable to the employee for worker's compensation and medical benefits in excess of the full amount paid in the compromise of a third party action, if written approval of such compromise is obtained from the employer or insurer by the employee or his dependent, at the time of or prior to such compromise.[8] Moreover, the liability for worker's compensation and medical benefits attaches only after the employer or insurer receives a dollar for dollar credit against the full amount paid in compromise, less attorney fees and costs paid by the employee in prosecution of the third party claim.
*433 However, when the written approval of the compromise is not obtained from the employer or the insurer, the employee or his dependent forfeits the right to future compensation, including medical expenses. LSA-R.S. 23:1102 B; Myers v. Burger King Corporation, 92-0400, 93-1626, p. 19 (La.App. 4th Cir. 5/26/94), 638 So.2d 369, 381. This statutory provision clearly contemplates that written approval of the employer and/or insurer is required for both pre-suit and post-suit compromises. The phrase "written approval of compromise" contains no additional qualifying language indicating that only compromises of filed suits are contemplated. A clear reading of the statute leads to the conclusion that the legislature reasonably contemplated that employers and/or insurers would have the right to approve or disapprove all third party settlements. Coolman v. Global Torque Turn, Inc., 93-664, p. 6-7 (La.App. 3rd Cir. 2/2/94), 631 So.2d 106, 109, writ denied, 94-0531 (La. 4/22/94), 637 So.2d 158.
In the instant case, Regional and/or LWCC did not consent to or approve the settlement with Allstate. Therefore, pursuant to the last three sentences of LSA-R.S. 23:1102B, when Triche failed to obtain the consent or approval of Regional and/or LWCC to settle his third party claim against Allstate and Delaune, Triche forfeited his right to future compensation, including medical expenses. See Myers v. Burger King Corporation, 638 So.2d at 381.
However, LSA-R.S. 23:1102 provides an escape provision for the employee who runs afoul of the requirement that he obtain the consent or approval of the employer or insurer. The employee is permitted to "buy back" the right to future compensation by paying the employer or insurer "the total amount of compensation benefits, medical benefits, attorney's fees and penalties, previously paid to or on behalf of the employee, exclusive of attorney's fees arising out of the compromise." This "buy back" provision, however, is subject to a ceiling in that the amount paid to the employer or insurer as "buy back" cannot exceed "fifty percent of the total amount recovered from the compromise." See Carl Minor v. Frank's Door and Building Supply Company, 94-2410 (La. App. 1st Cir. 6/23/95), 657 So.2d 737. See also Malone and Johnson, Workers' Compensation Law and Practice, 3rd § 373, pp. 310-311 (1994) (14 Louisiana Civil Law Treatise). Once a "buy back" is effected, the employer is entitled to a dollar for dollar credit of any other amounts paid in compensation, less attorney's fees and costs paid by the employee in prosecution of the third party claim.
In the usual situation, the law would permit Triche to pay Regional and/or LWCC the total amount of compensation and medical benefits paid (up to 50% of the total amount recovered in the compromise) and regain the right to future compensation benefits. However, in the instant case, we are presented with the unique factual situation where the employer or his insurer did not pay any worker's compensation or medical benefits to Triche. Therefore, under the facts presented herein, it is unnecessary for Triche to pay Regional and/or LWCC "the total amount of compensation benefits, medical benefits, attorney's fees, and penalties, previously paid to or on behalf of the employee, exclusive of attorney's fees arising out of the compromise" (subject to the 50% pay back penalties) as required by LSA-R.S. 23:1102 because none were paid. However, LSA-R.S. 23:1102 provides that the employer is entitled to a dollar for dollar credit against the full amount paid in compromise, less attorney's fees and costs paid by the employee in prosecution of the third party claim.
The record reveals that Triche settled his claim with Allstate and Delaune for $10,000.00, but there is no evidence of record showing the costs and attorney's fees, if any, Triche paid in prosecution of his third party claim. Ordinarily, instead of remanding this matter to the trial court, we would decide the issue de novo. See Gonzales v. Xerox Corporation, 320 So.2d 163, 165-66 (La.1975). However, when relevant evidence is not a part of the record on appeal, we cannot decide the issue de novo. LSA-C.C.P. art. 2164 provides, in pertinent part, that "[t]he appellate court shall render any judgment which is just, legal, and proper under the record on appeal." The court of appeal may remand the case to the trial *434 court for introduction of additional evidence to prevent a miscarriage of justice; such power is discretionary and depends upon the circumstances of the case. Huval Baking Company v. State, Worker's Compensation Second Injury Fund Board, 594 So.2d 1028, 1035 (La.App. 3rd Cir.1992); St. Pierre v. Hirschfeld, 569 So.2d 222, 226 (La.App. 1st Cir.1990).
Therefore, the matter must be remanded to the hearing officer for a determination of the appropriate credit to which Regional and/or LWCC are entitled.

PENALTIES AND ATTORNEY'S FEES
At all times pertinent hereto, LSA-R.S. 23:1201E provided for the imposition of a 12% penalty on compensation benefits when the employer or insurer fails to pay timely.[9] Penalties, however, are not to be assessed when the employee's right to such benefits has been reasonably controverted by the employer or insurer. Schmitt v. City of New Orleans, 632 So.2d 367, 374 (La.App. 4th Cir.1993).
Furthermore, LSA-R.S. 23:1201.2 provides, in pertinent part, as follows:
Any insurer liable for claims arising under this Chapter ... shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject... insurer, in addition to the amount of the claim due, to payment of all reasonable attorney's fees for the prosecution and collection of such claim.
This statute requires a finding that the defendant acted arbitrarily and capriciously and without probable cause before attorney's fees can be assessed. Hayes v. Louisiana Risk Management, 93-1144, p. 4 (La.App. 3rd Cir. 4/6/94), 635 So.2d 591, 593, writ denied, 94-1020 (La. 6/17/94), 638 So.2d 1097. See Bailey v. Smelser Oil & Gas, Inc., 620 So.2d 277, 280 (La.1993).[10]
The statutes providing for penalties and attorney's fees, which are penal in nature, must be strictly construed. Hayes v. Louisiana Risk Management, 635 So.2d at 592; Polk v. Babineaux's Plumbing, Inc., 628 So.2d at 74. An assessment of penalties and attorney's fees is proper, unless the employee's rights to benefits are reasonably controverted. Schmitt v. City of New Orleans, 632 So.2d at 374. The test to determine whether the employee's right to benefits was reasonably controverted is set forth in Watson v. Amite Milling Co., Inc., 560 So.2d 902, 906 (La.App. 1st Cir.), writ denied, 567 So.2d 614 (La.1990), quoting Chelette v. American Guarantee and Liability Insurance, Inc., 480 So.2d 363, 367 (La.App. 3rd Cir.1985), as follows:
[G]iven the facts, medical and otherwise, known to the employer or his insurer, did the employer or insurer have a reasonable basis to believe that medical expenses and compensation benefits were not due the employee. Stated another way, did the *435 employer or his insurer have sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant.
Whether the refusal to pay or the discontinuation of benefits warrants the imposition of penalties and attorney's fees is a factual question which will not be disturbed in the absence of manifest error. Johnson v. Vinson Guard Service, Inc., 92-2187, p. 3 (La.App. 1st Cir. 3/11/94), 636 So.2d 914, 916, writ not considered, 94-1661 (La. 9/2/94), 642 So.2d 1280; Pitcher v. Hydro-Kem Services, Inc., 551 So.2d 736, 740 (La.App. 1st Cir.), writ denied, 553 So.2d 466 (La.1989).
In the instant case, Gary Rebstock, President of Regional, testified that he did not pay medical bills or wages to Triche as a result of the automobile accident giving rise to the worker's compensation claim. Rebstock took the position that those items were the liability of the automobile insurer. Rebstock testified that the thought of those items being covered by worker's compensation did not occur to him. Rebstock testified that he monitored Allstate's performance of its obligations under its automobile liability policy and attempted to assist Triche in obtaining medical treatment. According to Rebstock, in the summer of 1993, when he learned that Triche had a worker's compensation claim for his injuries, he placed the matter into the hands of LWCC, the worker's compensation insurer.
Karen Young, an adjuster for LWCC, testified that LWCC first learned of Triche's claim when the accident was reported on September 29, 1993. Young noted that LWCC paid several medical bills for independent medical examinations, but that she did not pay any other medical expenses. Young testified that no other bills had ever been presented to her; she recanted that testimony, admitting certain bills had been presented to her, which she failed to pay. Young attributed her failure to pay those medical expenses to the fact that the matter was in litigation by the time she received many of the bills.
Young testified that she sent Triche for an examination with several physicians to substantiate whether Triche was disabled. Young testified that she was aware of the deposition of Dr. Walker. Despite the fact that Dr. Walker recommended evaluating Triche's emotional state, she did not set up any emotional evaluation because no one contacted her about it. Further, Young noted that no one contacted her about any other diagnostic tests, either. She noted that Dr. Walker determined that he did not see any clinical signs which would have prevented Triche from returning to work.
In the instant case, the testimony is clear that Regional and LWCC failed to pay any worker's compensation benefits to Triche, despite the fact that the automobile accident occurred while Triche was in the course and scope of his employment with Regional. Although Regional's initial failure to do so was based upon a misunderstanding of the law, LWCC failed to pay Triche weekly compensation benefits or pay any medical benefits upon receipt of notice of Triche's work-related accident. Regional and LWCC did not show that they had sufficient information to reasonably counter the factual and medical information presented by Triche.
After reviewing the entire record in this matter, we find that the hearing officer's award of penalties and attorney's fees as set forth in LSA-R.S. 23:1201 E and LSA-R.S. 23:1201.2 is not manifestly erroneous.

CONCLUSION
For the foregoing reasons, the judgment of the hearing officer, is amended as follows:
IT IS ORDERED, ADJUDGED AND DECREED that Scottie A. Triche is temporarily totally disabled.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Louisiana Worker's Compensation Corporation implement a wage benefits and medical payment program immediately pursuant to La.R.S. 23:1221(1). Scottie A. Triche is entitled to two-thirds of his stipulated wages of five ($5.00) per hour in a forty (40) hour week, as well as payment of all past, present, and future medical expenses, subject to a dollar for dollar credit against the full amount paid in compromise, less attorney fees and costs paid by the employee *436 in prosecution of the third party claim.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Scottie A. Triche is entitled to receive penalties, and Regional Electric and Construction, Inc. is ordered to pay said penalties in accordance with La.R.S. 23:1201 to Scottie A. Triche.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Keith J. Labat, counsel of record for Scottie A. Triche, is entitled to receive attorney's fees pursuant to La.R.S. 23:1201.2, and Regional Electric and Construction, Inc. is ordered to pay said fees in the amount of $2,500.00 to Keith Labat.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all costs of these proceedings are to be paid by the defendants, Regional Electric and Construction, Inc. and Louisiana Worker's Compensation Corporation.
The matter is remanded to the hearing officer for a determination of the amount of credit to which Regional and LWCC are entitled. In all other respects, the judgment of the hearing officer is affirmed. Costs of this appeal are assessed against Regional and LWCC for one-half and against Triche for one-half.
AMENDED, AFFIRMED AS AMENDED, AND REMANDED.
NOTES
[1] Judge Hillary J. Crain, retired, is serving as judge pro tempore, by special appointment of the Louisiana Supreme Court.
[2] Prior to trial, the parties stipulated that neither Regional nor its worker's compensation insurer paid for Triche's medical expenses.
[3] In the release, Triche compromised and settled his claim against Delaune and Allstate, as Delaune's liability insurer, but specifically reserved his claims against Allstate, as Regional's uninsured motorist (UM) insurer.
[4] The parties stipulated that Triche was paid $6.00 per hour for a forty-hour work week. Triche did not appeal the judgment, nor did he answer the appeal to question the amount of his benefits.
[5] The hearing officer signed the judgment on October 11, 1994.
[6] In his appellate brief, Triche contends that LWCC did not appeal the judgment and that the judgment of the hearing officer is final as to LWCC. We note that, although in the petition for appeal, only Regional is named as the appearer, the petition was filed by counsel in his capacity as counsel for Regional and LWCC. Moreover, LWCC, as an appellant, posted the suspensive appeal bond.
[7] By Acts 1989, No. 454, Section 6, LSA-R.S. 23:1221 was amended, effective January 1, 1990. These amendments set forth a more stringent standard of proof for a claimant seeking disability based on a temporary total disability.

Pursuant to LSA-R.S. 23:1221(1), as amended, the claimant must prove the nature and extent of his disability by "clear and convincing proof," unaided by any presumption of disability, that he is physically unable to engage in any employment or self-employment. Tanner v. International Maintenance Corporation, 602 So.2d 1133, 1137 (La.App. 1st Cir.1992). See Menard v. Winn Dixie Louisiana, Inc., 93-1497, p. 9-10 (La.App. 3rd Cir. 6/1/94), 640 So.2d 775, 781 and Taylor v. Louisiana-Pacific Corporation, 602 So.2d 48, 51 n. 1 and 2 (La.App. 3rd Cir.), writs denied, 606 So.2d 541, 542 (La.1992).
Prior to the 1989 amendment, the burden of proof in a claim for temporary total disability benefits was by a "preponderance of the evidence."
[8] LSA-R.S. 23:1102B also stipulates that, if the employer is self-insured, in whole or in part, written approval of the employer is required. Implicit in this provision is the notion that the insurer of a partially self-insured employer cannot supply the written approval of the settlement for the employer. In such cases, for the self-insured employer to be responsible for future compensation benefits, the written approval of any compromise for that employer must come from the employer itself. When this provision is read in context with the first sentence of LSA-R.S. 23:1102B, it is clear that the legislature did not limit the application of LSA-R.S. 23:1102B to self-insured employers or provide that insured employers do not have to provide written approval of a claimant's compromise of his third party action.
[9] LSA-R.S. 23:1201E provides, in pertinent part, as follows:

If, pursuant to this Chapter, any compensation or medical benefits payable without an order is not paid within the time period provided in Subsection B, C, or D of this Section, there shall be added to such unpaid compensation a penalty of an amount equal to twelve percent thereof or a total penalty of not more than fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid, whichever is greater, which shall be paid at the same time as, and in addition to, such compensation, unless such nonpayment results from conditions over which the employer or insurer had no control.
Prior to Acts 1992, No. 1003, effective January 1, 1993, this penalty provision was applicable to unpaid weekly compensation benefits only.
Subsection B of LSA-R.S. 23:1201 provides that the first installment of compensation payable for temporary total disability shall become due on the fourteenth day after the employer or insurer has knowledge of the injury.
[10] In Johnson v. Vinson Guard Service, Inc., 92-2187, p. 7 (La.App. 1st Cir. 3/11/94), 636 So.2d 914, 918, writ not considered, 94-1661 (La. 9/2/94), 642 So.2d 1280, this court held that "an employer, insured by a worker's compensation insurer cannot be held liable for ... attorney's fees." Regional, however, did not assign as error that portion of the trial court judgment which cast it liable for attorney's fees. Therefore, this issue is not before us on appeal.