755 So.2d 1003 (2000)
Mae Ola BOLTON
v.
TULANE UNIVERSITY.
No. 99-CA-0970.
Court of Appeal of Louisiana, Fourth Circuit.
March 1, 2000.
Writ Granted May 26, 2000.
*1005 Joseph G. Albe, Metairie, Louisiana, Counsel for Plaintiff/Appellee.
Edward A. Rodrigue, Jr., Boggs, Loehn & Rodrigue, New Orleans, Louisiana, Counsel for Defendant/Appellant.
(Court composed of Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY, Judge MICHAEL E. KIRBY).
KIRBY, Judge.
In this worker's compensation case, the plaintiff, Mae Ola Bolton, was awarded supplemental earnings benefits, medical expenses, penalties and attorney's fees. The defendant-employer, Tulane University, appeals the judgment of the Office of Worker's Compensation, and the plaintiff has answered the appeal.
On November 8, 1993, plaintiff, an assistant women's basketball coach at Tulane, was involved in an automobile accident while on a recruiting trip in Mississippi. Plaintiff was a guest passenger in the vehicle, which was rented from National Car Rental Systems, Inc. and driven by another Tulane assistant coach. It is undisputed that plaintiff received serious injuries in the accident. Plaintiff did not work from November 8, 1993 until February of 1994. She received worker's compensation benefits and medical expenses during that period. She returned to work in February 1994 and continued her employment at Tulane through late September or early October 1994 at which time the head basketball coach left Tulane and the new coach chose not to retain plaintiff as a member of the coaching staff. Plaintiff applied for and received unemployment compensation benefits from November 21, 1994 through December 20, 1994 and from January 30, 1995 through June 24, 1995.
On October 14, 1994, plaintiff filed a tort suit in the Civil District Court for the Parish of Orleans against several defendants, including Tulane and National Car Rental Systems, Inc. In that suit, plaintiff claimed that she was not in the course and scope of her employment at the time of her November 8, 1993 accident. Tulane intervened in the suit with a claim for reimbursement of benefits paid to plaintiff. On November 28, 1994, plaintiff filed a claim with the Office of Worker's Compensation, claiming that she was entitled to benefits because she was in the course and scope of her employment at the time of her accident.
In March 1996, plaintiff voluntarily dismissed her worker's compensation claim without prejudice, while her tort suit was still pending. Shortly thereafter, the trial court judge ruled that plaintiff was not in the course and scope of her employment at the time of the accident. However, that ruling was reversed on appeal and plaintiff was found to be in the course and scope of her employment at the time of the accident.[1] On March 18, 1998, plaintiff filed a motion to reopen her worker's compensation case, and the motion was granted.
On November 4, 1997, plaintiff settled her tort claim against National Car Rental Systems, Inc. for the sum of $35,000.00. It is undisputed that plaintiff did not receive written consent from Tulane prior to entering into her settlement with National Car Rental Systems. The settlement funds were deposited into the registry of the trial court and a hearing was held on August 21, 1998 to determine how the funds should be divided between plaintiff and Tulane. The trial court rendered judgment on September 4, 1998, allocating *1006 $21,666.67 of the settlement proceeds to plaintiff and $13,333.33 to Tulane.
The worker's compensation case was tried on November 12, 1998 and December 18, 1998 and the hearing officer rendered judgment on January 29, 1999. The hearing officer held that the plaintiff was entitled to supplemental earnings benefits (SEB) from October 1994 through the date of trial, except for those periods in which she received unemployment compensation benefits. She also awarded plaintiff medical and other miscellaneous expenses. The hearing officer assessed penalties and attorney's fees against Tulane for failure to pay SEB timely, failure to authorize and/or pay medical benefits and failure to timely provide medical reports. The judgment also included a credit to Tulane of $117.00 toward unpaid worker's compensation benefits, representing an additional amount that the hearing officer found Tulane was owed out of plaintiffs settlement with National Car Rental Systems.
On appeal, Tulane first argues that the hearing officer erred in failing to apply La. R.S. 23:1102 B, which controls situations in which an employee fails to obtain written approval from an employer before compromising a claim with a third party. La. R.S. 23:1102 B states as follows:
If a compromise with such third person is made by the employee or his dependents, the employer or insurer shall be liable to the employee or his dependents for any benefits under this Chapter which are in excess of the full amount paid by such third person, only after the employer or the insurer receives a dollar for dollar credit against the full amount paid in compromise, less attorney fees and costs paid by the employee in prosecution of the third party claim and only if written approval of such compromise is obtained from the employer or insurer by the employee or his dependent, at the time of or prior to such compromise. Written approval of the compromise must be obtained from the employer if the employer is self-insured, either in whole or in part. If the employee or his dependent fails to notify the employer or insurer of the suit against the third person or fails to obtain written approval of the compromise from the employer and insurer at the time of or prior to such compromise, the employee or his dependent shall forfeit the right to future compensation, including future medical expenses. Notwithstanding the failure of the employer to approve such compromise, the employee's or dependent's right to future compensation in excess of the amount recovered from the compromise shall be reserved upon payment to the employer or insurer of the total amount of compensation benefits, and medical benefits, previously paid to or on behalf of the employee, exclusive of attorney fees arising out of the compromise; except in no event shall the amount paid to the employer or insurer exceed fifty percent of the total amount recovered from the compromise. Such reservation shall only apply after the employer or insurer receives a dollar for dollar credit against the full amount paid in compromise, less attorney fees and costs paid by the employee in prosecution of the third party claim.
Although the hearing officer found that Tulane did not consent in writing to the settlement of plaintiffs claim against National Car Rental Systems, Inc., she stated that the forfeiture provision of R.S. 23:1102 B was inapplicable in this case because of her finding that Tulane unreasonably withheld its consent to the settlement.
Plaintiff argues that Tulane was aware of and assented to the compromise. Tulane states that it was not even consulted about the compromise in question before it was perfected. However, even assuming arguendo that Tulane was aware of the proposed compromise and withheld its consent, whether or not such an action was reasonable is irrelevant. It is undisputed that Tulane did not give written consent to *1007 the compromise. The requirement of R.S. 23:1102 B that an employee obtain written approval of his employer prior to compromising a claim with a third party or forfeit the right to future compensation is unambiguous and does not depend on the reasonableness of the employer in withholding consent.
In Triche v. Regional Electric & Construction, Inc., 95-0105 (La.App. 1 Cir. 10/6/95), 671 So.2d 425, an employee failed to obtain the consent or approval of his employer prior to settling his claim with a third party. The First Circuit held that under R.S. 23:1102 B, the employee forfeited his right to future compensation, including medical expenses. Id. at 9-10, 671 So.2d at 433. In Coolman v. Global Torque Turn, Inc., 93-664, p. 5-6 (La.App. 3 Cir. 2/2/94), 631 So.2d 106, 109, writ denied, 94-0531 (La.4/22/94), 637 So.2d 158, the Third Circuit reviewed the language of R.S. 23:1102 B and stated that "a clear reading of the statute leads to the conclusion that the legislature reasonably contemplated that employers and insurers would have the right to approve or disapprove all third party settlements."
Because plaintiff settled her claim with National Car Rental Systems without the written consent or approval of her employer, under the clear language of R.S. 23:1102 B, she forfeited her right to future compensation after that date.[2] Therefore, Tulane is not obligated to pay SEB benefits to plaintiff for the period from November 4, 1997 until the date of trial nor is it obligated to pay medical expenses incurred by plaintiff after November 4, 1997.
With regard to the phrase "future compensation" as used in R.S. 23:1102 B, Tulane argues that this also includes amounts that were due prior to the settlement but have not been paid. Tulane cites the case of Martin v. Midas Muffler Shop, 535 So.2d 1152 (La.App. 2 Cir.1988), in support of its position. However, we disagree with the Second Circuit on this issue. We agree with the First Circuit's interpretation that "future compensation" means any compensation benefits that became payable after the compromise. See Faught v. Ryder/P*I*E Nationwide, Inc., 543 So.2d 918 (La.App. 1 Cir.1989), writ denied, 545 So.2d 1040 (La.1989).
Tulane's next argument is that the hearing officer erred in finding that plaintiff was entitled to past medical expenses, and penalties and attorney's fees for Tulane's failure to authorize and/or pay for medical treatment. In her judgment, the hearing officer stated that "[c]laimant is entitled to have all medical and dental bills, medication expenses, hair salon treatment, parking and expenses, including mileage for all, at issue herein to be paid by defendant. If already paid by claimant, then reimbursed [sic] is due claimant." The hearing officer also found Tulane liable for penalties and attorney's fees under R.S. 23:1201 F for failure to authorize and/or pay medical benefits. She awarded plaintiff attorney's fees in the amount of $5,000.00 and a penalty of twelve percent (12%) of the unpaid medical benefits and expenses or a total of not more than fifty dollars per calendar day, whichever is greater, but with the $50.00 per day penalty not to exceed an aggregate of $2,000.00 under R.S. 23:1201 F.
In finding that plaintiff was entitled to an award of medical benefits, the hearing officer cited the case of Chitman v. Davison Trucking, 28,073 (La.App. 2 Cir. 2/28/96), 669 So.2d 671. The Chitman court stated:
In the event of a compensable injury, the employer is obligated to furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of the State as *1008 legal. R.S. 23:1203 A. The claimant must prove by a "reasonable preponderance of the evidence the necessity and relationship of treatment provided by [the physician] to the work-related accident." Lynn v. Berg Mechanical Inc., 582 So.2d 902 (La.App. 2d Cir.1991), and citations therein.
The hearing officer's determinations as to whether the worker's testimony is credible and whether the worker discharged the burden of proof are factual findings governed by the manifest error rule. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706.
Id. at p. 4-5, 669 So.2d at 674.
The plaintiff offered sufficient medical evidence to establish that her work-related accident caused injuries that continued to require medical treatment after she returned to work at Tulane. Evidence supporting plaintiff's claim included reports by two orthopedic surgeons, Drs. Daniel Seltzer and Bruce Razza, and a neuropsychologist, Dr. Janet Appel. Plaintiff has shown that the medical expenses documented in the exhibits represent treatment that was necessary and related to the work-related accident. Plaintiff is entitled to an award for medical expenses, but we will modify this award as discussed below.
Tulane argues that plaintiff is not entitled to reimbursement for past medical expenses because she did not request approval for treatment as required by La. R.S. 23:1142 B. Plaintiff argues that she was not required to request approval for medical treatment because Tulane denied that her injuries were compensable under the Worker's Compensation Act in its March 14, 1995 answer.
In her reasons for judgment on this issue, the hearing officer stated:
Defendant denied the accident, course and scope of employment, and disability in its answer to this OWC claim. This answer was filed March 14, 1995, almost three and one half months after the initial claim was filed. It was never amended. On July 5, 1998, defendant filed a pre-trial response that did not list the accident as an issue.
Request for approval of treatment is not required when the accident is denied. La. R.S. 23:1142(E), Martin v. Elmwood Medical Ctr., (La.App. 5th 1995), 665 So.2d 470, Johnson v. Chateau Living Ctr., (La.App. 5th 1995), 653 So.2d 1367.
Therefore, the claimant was not required to seek approval of treatment from defendant prior to July 5, 1998, when it officially withdrew [the] accident as an issue. Defendant owes the full amount of all necessary and reasonable medical treatment and expenses herein, which includes neuropsychology, to the extent of the fee schedule.
It is undisputed that Tulane denied that plaintiff suffered a work-related accident in its answer to the OWC claim dated March 14, 1995. However, Tulane contends that its pre-trial response, which did not list the accident as an issue, was filed on July 7, 1995, not on July 5, 1998 as stated by the hearing officer. Our review of the record supports Tulane's contention that the pre-trial response in question was filed on July 7, 1995. Therefore, as of July 7, 1995, Tulane no longer contested that plaintiff suffered a work-related accident.
La. R.S. 23:1142 states, in pertinent part:
B. (1) Except as provided herein, each health care provider may not incur more than a total of seven hundred fifty dollars in nonemergency diagnostic testing or treatment without the mutual consent of the payor and the employee as provided by regulation. Except as provided herein, that portion of the fees for nonemergency services of each health care provider in excess of seven hundred fifty dollars shall not be an enforceable obligation against the employee or the employer or the employer's workers' compensation *1009 insurer unless the employee and the payor have agreed upon the diagnostic testing or treatment by the health care provider.
E. In the event that the payor has denied that the employer's injury is compensable under this Chapter, then no approval from the payor is required prior to the provision of any diagnostic testing or treatment for that injury.
Tulane denied that plaintiff's injuries were compensable under the Worker's Compensation Act from March 14, 1995 until July 7, 1995, when its pre-trial response did not include the accident as a contested issue. During that period, plaintiff was not required to request approval for medical treatment from Tulane. Plaintiff was required under R.S. 23:1142 B to request approval for medical treatment before March 14, 1995 and after July 7, 1995. She failed to do so.
Therefore, Tulane is liable to plaintiff for any unreimbursed, unapproved nonemergency medical expenses incurred by plaintiff from the time Tulane denied that plaintiff suffered a work-related accident, March 14, 1995, until the filing of the pre-trial response on July 7, 1995.[3] For accident-related medical expenses incurred after July 7, 1995, Tulane is only obligated to reimburse plaintiff for amounts up to a maximum of $750.00 per health care provider.[4] See Parfait v. Gulf Island Fabrication, Inc., 97-2104 (La.App. 1 Cir. 1/6/99), 733 So.2d 11. Similarly, Tulane is entitled to the statutory cap of $750.00 per health care provider for unpaid, unapproved, non-emergency treatment received by plaintiff from the date of the accident until March 14, 1995.
Tulane also argues that plaintiff voluntarily abandoned her medical treatment for conditions related to her work-related accident. Although plaintiffs medical treatment for her work-related accident was sporadic after mid-1995, we do not agree with Tulane's position that plaintiff abandoned her medical treatment. Furthermore, as stated above, Tulane is responsible for no more than $750.00 per health care provider for medical treatment received after July 7, 1995 for injuries relating to this accident. Also, under the forfeiture provision of R.S. 23:1102 B, Tulane is not obligated for any medical benefits incurred after November 4, 1997, the date on which plaintiff settled her claim with National Car Rental Systems without the written consent of Tulane.
In support of her award of penalties and attorney's fees for Tulane's failure to authorize and/or pay medical benefits, the hearing officer stated the following:
Defendant consistently refused to authorize continued reasonable and necessary medical treatment for claimant without any just reason. Defendant just chose to say no or remain silent. Defendant did not reasonably controvert these issues of request for treatment and payment of bills. Therefore, penalties and attorneys fees are due.
Tulane argues that it acted reasonably in the handling of plaintiffs medical benefits. It notes that from October 1994 forward, plaintiff was contending in Civil District Court that she was not in the course and scope of her employment at the time of the accident. Tulane's position is that it acted reasonably in assuming that plaintiff was not entitled to medical benefits under the Worker's Compensation Act after that date. We disagree. Notwithstanding the filing of plaintiffs tort suit, Tulane was aware as of November 28, 1994 that plaintiff was also pursuing a worker's compensation claim, which alleged that she was in the course and scope of her employment. Tulane ultimately did not contest that plaintiff was within the course and scope of *1010 her employment at the time of the accident and the hearing officer concluded that plaintiff's injuries were a result of the work-related accident. We agree with that finding.
Tulane paid plaintiffs medical expenses until she returned to work in February 1994. Any subsequent refusal to pay medical expenses would be classified as a discontinuance of medical benefits, which is governed by R.S. 23:1201.2. R.S. 23:1201.2 authorizes an award of attorney's fees, but not penalties, when an employer arbitrarily or capriciously discontinues payment of benefits due. See Williams v. Rush Masonry Inc., 98-2271 (La.6/29/99), 737 So.2d 41. Because R.S. 23:1201.2 does not authorize an award of penalties for discontinuance of medical benefits, we reverse that award.
With regard to the award of attorney's fees, we refer to our earlier holding in this opinion that, except for the period from March 14, 1995 through July 7, 1995, plaintiff was required by R.S. 23:1142 B to request approval from Tulane for her nonemergency medical treatment related to this accident. She failed to do so. The record discloses that only nominal medical expenses were incurred from March 14, 1995 until July 7, 1995. Given the fact that the plaintiff failed to request Tulane's approval for the vast majority of her medical treatment at issue, we cannot say that Tulane's failure to pay the nominal expenses incurred during the period from March 14, 1995 through July 7, 1995 was arbitrary or capricious. Accordingly, we reverse the award of attorney's fees for failure to pay medical benefits.
Tulane also argues that plaintiff is not entitled to reimbursement for past compensation benefits, nor are penalties and attorney's fees due for failure to pay benefits. On this issue, Tulane also argues that the hearing officer erred in determining the amount of SEB that plaintiff should receive. In her judgment, the hearing officer held that plaintiff is entitled to SEB from October 1994 through the date of trial except for the periods that she received unemployment compensation benefits, November 21, 1994 through December 20, 1994 and January 30, 1995 through June 24, 1995. As stated above, the plaintiff forfeited her claim to any benefits after November 4, 1997, the date on which she settled her claim against National Car Rental Systems without the consent of Tulane. The hearing officer listed plaintiffs earnings from 1994 through 1998 and ruled that those earnings were to be used in calculating the amount of SEB due for each period, with the exception of those periods for which she is not entitled to receive SEB because she received unemployment benefits.
Tulane argues that plaintiff is not entitled to receive SEB because she was capable of returning to her former occupation as a basketball coach, where she worked for over two years after the accident. Tulane states that even though plaintiff's earnings after leaving Tulane were less than what she received at Tulane, she was nonetheless able to perform the same work after the accident as she did prior to the accident.
In Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), p.8-9, 696 So.2d 551, 556, our Supreme Court summarized the rules regarding supplemental earnings benefits as follows:
"The purpose of SEBs is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident." Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52, 55 (La.1993). An employee is entitled to receive supplemental earnings benefits (SEBs) if he sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage. LA.REV. STAT.ANN. § 23:1221(3)(a) (West Supp. 1997). Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under *1011 the facts and circumstances of the individual case. Freeman, 93-1530 at p. 7, 630 So.2d at 739. "Th[is] analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that workers' compensation is to be liberally construed in favor of coverage." Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1007 (La. 1989).
Once the employee's burden is met, the burden shifts to the employer who, in order to defeat the employee's claim for SEBs or establish the employee's earning capacity, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region. LA.REV.STAT.ANN.
§ 23:1221(3)(c)(i) (West Supp.1997); Daigle, 545 So.2d at 1009. Actual job placement is not required. Romero v. Grey Wolf Drilling Co., 594 So.2d 1008, 1014-15 (La.App. 3d Cir.1992). The amount of SEBs is based upon the difference between the claimant's pre-injury average monthly wage and the claimant's proven post-injury monthly earning capacity. LA.REV.STAT.ANN. § 23:1221(3)(a) (West Supp.1997).
In finding that plaintiff is entitled to SEB, the hearing officer stated in her reasons for judgment as follows:
Claimant was earning $32,500.00 a year as a women's assistant basketball coach at the time of the accident. This OWC Court rejects defendant's argument that claimant voluntarily resigned from her position in October of 1994 and, therefore, it owed her no further indemnity obligations. Claimant was being told by all of her doctors (and some where defendant's doctors and physical therapies noted worsening of symptoms) that she needed to change professions and had restrictions that interfered with the performance of her job. Claimant was aware that she could not do the job. Defendant offered no testimony that it was offering claimant a modified position at the same salary. Defendant never offered claimant any vocational rehabilitation efforts despite the doctors' reports that she needed a new occupation.
Our review of the record supports the hearing officer's conclusion that plaintiff proved that her work-related injury resulted in her inability to earn ninety percent (90%) or more of her average pre-injury wage. The record also supports the hearing officer's conclusion that plaintiff did not voluntarily resign from Tulane. Since her employment with Tulane ended, plaintiff has not been able to find a comparable job that enables her to earn 90% or more of what she earned at Tulane. Her testimony was that her injury has adversely affected her ability to adequately perform many of the physical and mental aspects of coaching. Plaintiff has had to pursue less lucrative job opportunities because of her limitations. The hearing officer found plaintiff to be a credible witness and we do not find that determination to be manifestly erroneous.
The evidence presented also included medical reports from several doctors. Dr. Daniel Seltzer, an orthopedic surgeon, opined that plaintiff's accident-related injuries limited her ability to perform the physical aspects of a coaching job. Dr. Janet Appel, a neuropsychologist, opined that plaintiff's injuries will cause her to experience difficulties adapting to changes in her job functions and will require assistance with her more demanding job responsibilities.
Plaintiff carried her burden of proving that she is entitled to SEB. Tulane did not offer sufficient evidence to defeat plaintiff's claim for SEB. Thus, we find no error in the hearing officer's decision to award SEB to plaintiff. However, as stated above, plaintiff's entitlement to SEB ends *1012 on November 4, 1997, rather than the date of trial.
With regard to the hearing officer's determination that SEB owed to plaintiff should be calculated on the basis of the wages actually earned in the years following the accident, Tulane argues that these calculations should be based on earning capacity, not on actual wages earned. We find no merit in this argument because, in this particular situation, plaintiff proved that the wages she earned following the accident also represented her earning capacity in those years. Tulane did not prove that plaintiff had the capacity to earn higher wages than those actually earned.
The hearing officer also found Tulane liable for attorney's fees and penalties for failure to pay compensation benefits. She awarded attorney's fees of $15,000.00 and a penalty of twelve percent (12%) of the unpaid compensation or a total of not more than fifty dollars per calendar day, whichever is greater, but with the $50.00 per day penalty not to exceed an aggregate of $2,000.00.
Initially, we note that Tulane paid compensation benefits to plaintiff until her return to employment in February 1994 and then discontinued those payments. When plaintiff subsequently lost her job at Tulane and filed a claim for worker's compensation benefits, Tulane did not reinstate plaintiff's benefits even though Tulane did not dispute after July 7, 1995 that plaintiff had suffered a work-related injury.
As we stated earlier in this opinion, under R.S. 23:1201.2, penalties are not authorized for an employer's discontinuance of benefits. Therefore, we reverse the award of penalties. Attorney's fees are allowed if the employer arbitrarily or capriciously discontinued compensation benefits. Plaintiff alleged in her claim for compensation benefits that she continued to suffer from her work-related injury. The record does not show that Tulane presented sufficient evidence to dispute this. We do not find that the hearing officer erred in finding that Tulane's discontinuance of compensation benefits was arbitrary and capricious. However, in light of our revisions to plaintiff's awards, this award for attorney's fees must be reduced accordingly. Based on the work related to the items which we find plaintiff can recover, we find that an award of $3,000.00 for attorney's fees is appropriate.
Tulane next argues that the hearing officer erred in awarding penalties and attorney's fees for failure to timely supply medical records. The hearing officer cited R.S. 23:1125 in support of this award of $500.00 in attorney's fees and $250.00 in penalties. By letter, plaintiff's attorney requested that Tulane supply "any and all medical records concerning our client's injury." Tulane argues that R.S. 23:1125 only allows penalties and attorney's fees to be assessed for failure to provide medical reports where an employee is examined by a doctor at the request of the employer. We agree.
In Gers v. National Tea Company, 94-1163, p. 9 (La.App. 3 Cir. 5/31/95), 656 So.2d 777, 782, the Third Circuit stated:
The language of La. R.S. 23:1125 clearly limits the assessment of penalties to situations where an employee is examined by a doctor at the request of the employer.
Plaintiff's general request for medical records is not covered by R.S. 23:1125. Thus, we find the hearing officer erred in awarding penalties and attorney's fees under this statute. Those awards are reversed.
Tulane's final argument is that the hearing officer erred in awarding multiple penalties and attorney's fees under R.S. 23:1201. Because we are reversing all awards of penalties in this case and all but one award of attorney's fees, we need not consider this argument.
Plaintiff answered the appeal in this case, raising two arguments. In her first argument, plaintiff contends that she is entitled to an additional award of attorney's *1013 fees for having to answer this appeal. We do not find such an additional award to be warranted and hereby deny plaintiff's request.
Next, plaintiff argues that the Tulane is not entitled to a credit for any amount received by plaintiff in the third party settlement in Civil District Court. Plaintiff contends that Tulane assented to the compromise and therefore is not entitled to any credit or offset.
We reject plaintiffs argument that Tulane assented to the compromise between plaintiff and National Car Rental Systems. As stated above, Tulane's written consent to the compromise was required under R.S. 23:1102 B. It is undisputed that Tulane did not give written consent to this compromise. In failing to obtain such written consent of her employer, plaintiff's recovery is subject to the forfeiture provision of R.S. 23:1102 B.
The hearing officer found that Tulane was entitled to a credit of $117.00 after reviewing the settlement disbursement made by the district court. The hearing officer's calculations were based on R.S. 23:1103. However, as correctly argued by Tulane, R.S. 23:1103 is not the controlling statute in this case because Tulane did not assent to the compromise. See R.S. 23:1103(2). The controlling statute in this matter is R.S. 1102 B. Because plaintiff has not availed herself of the buy back provision of R.S. 1102 B[5], we will not disturb the disbursement of the settlement funds as detailed by the district court in its September 4, 1998 judgment. The hearing officer erred in redistributing the figures under R.S. 23:1103 and allowing a credit of $117.00 to Tulane.
For the reasons stated above, we reverse the awards of penalties for failure to pay compensation benefits and for failure to pay medical benefits. We also reverse the award of penalties and attorney's fees for failure to timely supply medical records. We reverse the award of $5,000.00 in attorney's fees for failure to pay medical benefits. We also reverse the credit of $117.00 to Tulane. The award of $15,000.00 in attorney's fees for failure to pay compensation benefits is reduced to $3,000.00. The judgment is modified to state that SEB is due to plaintiff only through November 4, 1997. The judgment is also modified to state that Tulane must reimburse plaintiff for unapproved nonemergency medical expenses related to this accident that were incurred from March 14, 1995 through July 7, 1995. For unreimbursed accident-related medical expenses incurred prior to March 14, 1995 and from July 7, 1995 through November 4, 1997, Tulane is obligated to pay no more than $750.00 to each health care provider. In all other respects, the judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART; MODIFIED IN PART.
NOTES
[1] Bolton v. Tulane University of Louisiana, 96-1246 (La.App. 4 Cir. 1/29/97), 692 So.2d 1113, writ denied, 97-1229 (La.9/26/97), 701 So.2d 982.
[2] Plaintiff has not attempted to avail herself of the provisions in R.S. 23:1102 B allowing a claimant in her position to buy back her right to future compensation. See Berry v. River City Timber, 27,364 (La.App. 2 Cir. 9/27/95), 661 So.2d 668, writ denied, 95-2612 (La.1/5/96), 666 So.2d 293.
[3] The medical records only show one statement from Tulane Medical Center that reflects expenses incurred by plaintiff during this time period.
[4] It has not been alleged that plaintiff received any emergency treatment after July 7, 1995.
[5] The issue of whether the plaintiff will be entitled to future compensation benefits if she complies with the buy back provision of R.S. 23:1102 B is premature.