STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT


18-880



MICHAEL MCCALLON

VERSUS

KEY ENERGY SERVICES, LLC, ET AL.




**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 4
PARISH OF LAFAYETTE, NO. 15-06127
ANTHONY PAUL PALERMO, WORKERS' COMPENSATION JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Elizabeth A. Pickett, Phyllis M. Keaty, and Jonathan W. Perry, Judges.


REVERSED IN PART; AMENDED IN PART; AFFIRMED AS
AMENDED; AND REMANDED WITH INSTRUCTIONS.



Brian D. Calvit
Law Office of Brian D. Calvit
7920 Wrenwood Blvd., Suite F
Baton Rouge, Louisiana  70809
(225) 926-2222
COUNSEL FOR PLAINTIFF-APPELLANT/APPELLEE:
     Michael McCallon

**Michael E. Parker**
**Allen & Gooch**
**A Law Corporation**
**Post Office Box 81129**
**Lafayette, Louisiana 70598-1129**
**(337) 291-1000**
**COUNSEL FOR DEFENDANT-APPELLANT:**
    Key Energy Services, LLC

**PICKETT, Judge.**

The employee and his employer appeal the judgment rendered by the workers' compensation judge (WCJ) in favor of the employee. For the reasons discussed below, the judgment is reversed in part; amended in part; affirmed as amended; and remanded with instructions.

## FACTS

On February 3, 2015, Michael McCallon was injured when the taxi in which he was a passenger was struck by another vehicle. Mr. McCallon, a resident of Natchez, Mississippi, was employed by Key Energy Services, LLC, as a derrick hand. He traveled to and from Williston, North Dakota, for work. Mr. McCallon had completed an eighteen-day hitch and was traveling to the Williston airport to return home when the collision occurred. To insure that he did not miss his flight, Mr. McCallon had his taxi driver arrange for another taxi to transport him the remaining distance to the airport.

Once home in Natchez, Mr. McCallon sought treatment for back pain and radiating leg pain, which he reported began during his flight home. He was diagnosed with a herniated disc at L5-S1, and surgery to repair the injury was performed in July 2015. One of Mr. McCallon's employee benefits was short-term disability, and he filed a claim for short-term disability benefits after learning the extent of his injury. He was paid short-term disability benefits until August 4, 2015.

In September 2015, Mr. McCallon filed a Disputed Claim for Compensation in which he alleged that he was injured while in the course and scope of his employment with Key Energy Services and, therefore, entitled to indemnity and medical benefits. Key Energy Services denied his claim and contends that Mr.

McCallon was not in the course and scope of his employment when the collision occurred and that the collision was not an accident as defined by the Louisiana Workers' Compensation Act.

In April 2016, Mr. McCallon was a passenger in a vehicle when the driver lost control of the vehicle, and it rolled over. His L-3 vertebra was fractured in the accident. In May 2016, Mr. McCallon notified Key Energy Services of the accident and his injury. In June 2016, Mr. McCallon settled his claim for personal injuries against the driver and insurer of the vehicle for the $25,000 policy limits without obtaining Key Energy Services' consent to the settlement.

On July 18, 2016, the parties tried their claims before the WCJ. The parties' claims presented a number of issues for resolution, including whether Mr. McCallon was injured in an accident that occurred within the course and scope of his employment when the taxi collision occurred; if so, was Key Energy Services entitled to an offset for the short-term disability benefits Mr. McCallon was paid; and whether Mr. McCallon forfeited his right to compensation benefits because he settled his personal injury claim arising from the April 2016 accident without Key Energy Services' consent.

After taking the matter under advisement, the WCJ issued an oral ruling in which he held that Mr. McCallon was injured in the course and scope of his employment and entitled to indemnity and medical benefits. The WCJ further held that the April 2016 accident caused Mr. McCallon further injury and disability and that Mr. McCallon settled his claim for injuries arising out of that accident without obtaining Key Energy Services' consent to the settlement. Based on this finding, the WCJ held that Mr. McCallon forfeited all benefits to which he was or would be

2

entitled. On December 16, 2016, the WCJ signed a judgment consistent with his WCJ oral ruling.

Thereafter, Mr. McCallon filed a Motion for New Trial and/or Motion to Amend Judgment, and Key Energy Services filed a Motion for New Trial and/or Clarification of Ruling. After a hearing on both motions, the WCJ denied the motion for new trial but agreed to amend the judgment. On March 16, 2017, the WCJ again issued oral reasons for ruling in which he determined that because Mr. McCallon settled his injury claim for the April 2016 accident without Key Energy Services' consent, Mr. McCallon forfeited any benefits to which he was entitled after the April 2016 accident. The WCJ further stated that Mr. McCallon is not entitled to any benefits prior to the April 2016 accident, "until such time as a credit would be reduced by the [monies] he received in the tort suit, and/or [he] pays Key Energy Services for any benefits received."

After this oral ruling, Key Energy Services filed a Motion to Fix Judgment, and on June 12, 2018, the WCJ issued a second judgment. In this judgment, the WCJ held that Mr. McCallon was in the course and scope of his employment with Key Energy Services at the time of the accident, that he is entitled to benefits from February 3, 2015, to April 16, 2016, and that all medical bills are to be paid in accordance with the Louisiana Workers' Compensation fee schedule. The WCJ also held that Mr. McCallon "forfeited his rights to indemnity and/or medical benefits due to his failure to inform Key Energy Services and receive their [sic] consent to settle" his claim for the April 2016 accident. Both parties appealed.

## ASSIGNMENTS OF ERROR

Mr. McCallon assigns the following errors with the WCJ's judgment:

1. The WCJ erred in finding that Claimant's subsequent accident aggravated the employment[-]related injury and resulted in further disability.

2. The WCJ committed legal error in applying the forfeiture provisions to indemnity benefits owed prior to the date of compromise.

3. The WCJ committed legal error by not allowing Claimant to reserve his right to future compensation under the "Buy Back" provision of La.R.S. [23:]1102(B).

4. The WCJ erred in failing to award penalties and attorney fees for . . . Key [Energy Services'] failure to reasonabl[y] controvert.

Key Energy Services assigns the following errors with the WCJ's judgment:

1. The [WCJ] erred in finding that Michael McCallon was in the course and scope of his employment with Key Energy Services . . . at the time of the incident in question.

2. The [WCJ] erred in finding that Michael McCallon proved the occurrence of an accident while in the course and scope of his employment with Key Energy Services as that term is defined by the Louisiana Workers' Compensation Act.

3. The [WCJ] erred in ordering that all medical bills incurred as a result of the February 3, 2015 accident be paid in accordance with the fee schedule established by the State of Louisiana instead of limiting reimbursement to $750 per provider for failure to obtain prior consent.

4. The [WCJ] erred in failing to give Key Energy Services a credit for payment of medical bills made by Michael McCallon's health insurance.

## DISCUSSION

The issues presented by the parties herein question legal conclusions and factual findings made by the WCJ. On appellate review, an incorrect legal conclusion made by the trial court regarding a question of law is reviewed de novo. *Latiolais v. Bellsouth Telecomms., Inc.*, 11-383 (La.App. 3 Cir. 10/5/11), 74 So.3d

872. Factual findings are reviewed pursuant to the manifest error-clearly wrong standard, and the findings of the WCJ will not be set aside unless a review of the entire record shows that they are clearly wrong. *Talbot v. Mouton Plumbing & Hauling, Inc.*, 17-759, 17-357 (La.App. 3 Cir. 4/25/18), 244 So.3d 1235.

For ease of discussion, we discuss the issues presented by the parties' assignments of error in chronological order of the facts that gave rise to the assigned errors.

### *Did an Accident Occur within the Course and Scope of Employment?*

Key Energy Services contends that Mr. McCallon was not in the course and scope of his employment with Key Energy Services when the taxi was hit and that this event does not satisfy the definition of "accident" as provided by the Louisiana Workers' Compensation Act. In accordance with its employment agreement, Key Energy Services scheduled Mr. McCallon's air travel to and from Williston via the Baton Rouge airport, paid his round-trip airfare, provided his lodging while working in Williston, and paid him eight hours pay at his regular hourly rate on the days that he traveled to and from Williston for work. Megan Smith, Key Energy Services workforce coordinator in Williston, testified that Key Energy Services established its travel program as an incentive to attract qualified employees to work in Williston, that the employee's agreement to this program is a requirement of employment with Key Energy Services, and that Key Energy Services did not offer relocation to Williston to its employees.

Ms. Smith made all air travel arrangements for Key Energy Services employees. She testified that travel dates were determined by the employee's work schedule, and once made, scheduled air travel would be changed only in an emergency. Otherwise, the employee was responsible for making the change and

paying the rescheduled air fare. Once in Williston, employees were responsible for their transportation to and from their lodging in Williston to the airport. Mr. McCallon testified that Jim Bureau, his superior in Williston, instructed Key Energy Services' employees to arrive at the airport in Williston one hour before their scheduled flight.

Compensation benefits are owed to an employee when he suffered "personal injury by accident arising out of and in the course and scope of his employment[.]" La.R.S. 23:1031(A). The phrase "arising out of" has been interpreted to include injuries that occur in certain circumstances that are not within the course and scope of employment. It has been held to mean "that the accident must be the result of some risk to which the employee is subjected in the course of his employment and to which he would not have been subjected had he not been so employed." *Kern v. Southport Mill, Ltd.*, 174 La. 432, 437, 141 So. 19, 21 (1932). The supreme court explained:

> In determining, therefore, whether an accident 'arose out of' the employment, it is necessary to consider only this: (1) Was the employee then engaged about his employer's business and not merely pursuing his own business or pleasure; and (2) did the necessities of that employer's business reasonably require that the employee be at the place of the accident at the time the accident occurred?
>
> The question whether or not the employee *might* have been injured in the same way, and even at the same place and time had he not been called there by the necessities of his employer's business, but had gone there only for his own pleasure or in pursuit of his own business, has nothing whatever to do with the case. It was his employer's business which called him to the place and time of the accident and not his own pleasure or business; and hence his injuries arose out of his pursuit of his employer's business and not out of his pursuit of his own business or pleasure.

*Kern*, 174 La. at 438-39, 141 So. at 21.

In *Jackson v. Long*, 289 So.2d 205, 207 (La.App. 4 Cir. 1974), the court clarified that when considering whether an employee's injuries arose out of the course and scope of his employment, courts must review the facts to determine "the closeness of the relationship between the accident and the employment." This is especially true when the employee was injured when traveling to or from work and his employer "concerned himself with the employee's transportation . . . by furnishing transportion or paying the cost thereof or paying the employee wages for the time spent in traveling." *Id.*

*Jackson* involved travel pursuant to a contract for the employer to provide temporary labor in Mississippi after Hurricane Camille. At the direction of the employer, two employees traveled together in one of the employee's vehicles. The passenger laborer was injured as a result of an accident caused by the other laborer's negligence. The court concluded that the injured employee was entitled to compensation benefits based on a number of facts that are present here or similar to the facts in this case, explaining:

> [The employer was] much more concerned with the employee getting to his place of work than was the ordinary employer . . . . Consequently, [the] employee, while traveling to the assigned work place, was actually furthering his employer's business interest, and in that respect the trip can be regarded as a necessary and required part of his employment.

*Id.* at 208. In reaching this conclusion, the court observed "that traveling was an integral part of this employment contract" and determined that because "the travel was in furtherance of the employment . . . the risk of accident during travel was a risk interrelated with the nature of that employment." *Id.* Therefore, the employee "was protected while traveling to the assigned place of work in obedience to the employer's instructions and for the employer's benefit." *Id. See also Orgeron on*

7

*Behalf of Orgeron v. McDonald*, 93-1353 (La. 7/5/94), 639 So.2d 224, 228, where the employer's interception of an employee traveling home from work and rerouting him to another job via the employer's office was held to evidence a "high degree of employer control and employer benefit in the specially ordered trip . . . [that] brought the trip within the course and scope of [the employee's] employment."

Key Energy Services cites *Potier v. Acadian Ambulance Service, Inc.*, 13-914 (La.App. 3 Cir. 2/12/14), 153 So.3d 1082, *writ denied*, 14-527 (La. 4/25/14), 138 So.3d 647, in support of its position. There, the employee worked at more than one ambulance substation; however, his employer designated a specific substation as his home substation and paid him mileage based upon the predetermined distance between his home substation and whatever substation he was scheduled to work out of rather than the mileage he actually traveled. The employee was not compensated for the time he spent traveling, and the employer's representative testified that mileage was paid to induce or attract qualified personnel to travel to different substations.

In *Potier*, this court looked to *Mitchell v. Pleasant Hill General Hospital, Inc.*, 491 So.2d 183 (La.App. 3 Cir.), *writ denied,* 493 So.2d 1223 (La.1986), for guidance in resolving the issue. In *Mitchell*, 491 So.2d at 185 (emphasis added) (footnote omitted), this court explained:

> The mere payments of travel expenses, *without an expressed or implied agreement to furnish transportation,* does not place the employee within the course and scope of his employment while traveling to and from work if such payments bear no relation to the actual travel expenses involved in the specific case, and are intended only as an inducement to attract qualified personnel at a particular job site.

*Potier* does not apply to the facts herein.  In addition to paying him an inducement of eight hours pay the days he flew to and from Williston, Key Energy Services provided Mr. McCallon's air transportation to and from Williston and instructed him to be at the airport an hour before his flight.

Key Energy Services argues that because Mr. McCallon was responsible for providing his own transportation between the airport and his work site in Williston, Mr. McCallon's situation differs from the similar cases discussed above.  We disagree.  The sole reason Mr. McCallon traveled to Williston and to and from the airport there was his employment with Key Energy Services and its business in Williston.  Travel was an integral part of his employment.  Accordingly, the WCJ did not err in finding that Mr. McCallon was in the course and scope of his employment with Key Energy Services when he was injured during his taxi ride to the airport.

Key Energy Services next argues that because Mr. McCallon did not seek medical attention until he arrived home in Natchez, some fifteen hours after the collision, the WCJ erred in finding that Mr. McCallon proved he was injured in an accident as defined by the Louisiana Workers' Compensation Act.  Accident is defined, in part, as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently . . . directly producing at the time objective findings of an injury[.]"  La.R.S. 23:1021(1).  Key Energy Services points to the phrase "directly producing at the time objective findings of an injury" as support for its argument without citing one case in which a similar argument has been upheld.  The jurisprudence is replete with cases where employees who did not experience or report objective signs of injury immediately after an incident occurred were held to have proved they suffered an accident.  *See*, *e.g.*, *Bruno v.*

9

*Harbert Int'l Inc.*, 593 So.2d 357 (La.1992), where the employee did not report that she injured her back at work and did not seek medical attention for her injury for more than eight days.

Lastly, *Bourgeois v. Seabright Insurance Co.*, 12-834 (La.App. 5 Cir. 4/10/13), 115 So.3d 50, cited by Key Energy Services, does not stand for this proposition. Rather, it holds that an employee "must prove an 'actual, *identifiable*, precipitous event'" caused his injury, which Mr. McCallon has done. *Id*. at 53 (quoting La.R.S. 23:1021(1)). It does not hold that "directly producing . . . objective findings of an injury" is synonymous with immediately causing objective signs of an injury.

Key Energy Services also argues that because Mr. McCallon did not identify his injury as being work-related when he sought medical treatment and obtained short-term disability benefits, he acknowledged that his L5-S1 injury was not a work-related injury. As the WCJ observed, a lay person is not expected to know the legal requirements as to whether an injury is work-related or not. The WCJ did not err in finding that Mr. McCallon proved that he suffered an accident in the course and scope of his employment with Key Energy Services.

### Subsequent Accident and Notice

The WCJ held that Mr. McCallon's settlement of his personal injury claim arising out of that accident without obtaining Key Energy Services' consent to the settlement resulted in forfeiture of his right to compensation benefits. If an employee settles a personal injury claim against a "third person" without his employer's consent, he forfeits "the right to future compensation, including medical expenses." La.R.S. 23:1102(B). Third persons are defined as "any party who causes injury to an employee at the time of his employment or at any time

10

thereafter" when "the employer is obligated to pay benefits . . . because the injury by the third party has aggravated the employment related injury." La.R.S. 23:1101(C).

Mr. McCallon argues that the WCJ did not hold that the April 2016 accident aggravated his work-related back injury and that Key Energy Services did not prove that the April 2016 accident and injury aggravated his work-related back injury; therefore, the requirements of La.R.S. 23:1102(B) do not apply here. He further argues that if these requirements are held to apply, he provided Key Energy Services notice of the April 2016 accident, which allowed Key Energy Services the opportunity to protect its interests, but it failed to do so. For these reasons, Mr. McCallon contends that the WCJ erred in holding that he is only entitled to compensation benefits from February 3, 2015, through April 16, 2016.

For the WCJ to conclude that Mr. McCallon forfeited his compensation benefits for failing to obtain Key Energy Services' consent to his settlement, the WCJ must have determined that the April 2016 accident aggravated his work-related injury. The WCJ's oral reasons indicate that he did make this determination. The WCJ cited *Haynes v. United Parcel Service*, 05-2378 (La. 7/6/06), 933 So.2d 765, in support of its holding on this issue. The employee in *Haynes* was involved in two automobile accidents after he suffered a work-related injury. His physician testified that the injury he suffered in the first automobile accident was minimal. The employee testified, however, that both accidents were an "aggravation to the injuries I already had." *Haynes*, 933 So.2d at 769. The supreme court held that for purposes of La.R.S. 23:1101(C) and La.R.S. 23:1102(B), the employee's testimony established that the two automobile accidents aggravated his work-related injury.

11

Mr. McCallon testified that his back surgery to repair the herniated disc caused by the February 2015 accident was performed on July 2, 2015. He explained that after surgery, he regained feeling in his legs but had no pain other than pain related to his back surgery. Dr. Robert McGuire, his orthopedic surgeon, restricted Mr. McCallon's activities and ordered no heavy lifting. Mr. McCallon testified that the April 2016 accident fractured his L-3 vertebra and that the injury was being treated with pain medication and a back brace. He further testified that during his June 2016 visit with Dr. McGuire, Dr. McGuire informed him that he planned to perform a fusion if the L-3 vertebra did not heal. Mr. McCallon also testified that he had improved after his July 2015 surgery, but the April 2016 accident caused him more back pain than he had the day before the accident. Mr. McCallon's medical records show that the last prescription he filled for pain medication before the April 2016 accident was filled on August 3, 2015. After that date, he did not fill another prescription until April 19, 2016, which is the last date of the pharmacy records.

Dr. McGuire was deposed in February 2016. He testified that he last saw Mr. McCallon on January 4, 2016. At that time, Mr. McCallon was not completely healed, but he was doing well and had minimum signs of deficit. Dr. McGuire testified that Mr. McCallon could not go back to work at that time; however, he anticipated being able to release Mr. McCallon in June of 2016 after having him complete a functional capacity evaluation to determine what, if any, physical limitations he had.

Mr. McCallon contends there is no evidence establishing that Dr. McGuire cannot distinguish the two injuries and determine that his L5-S1 injury had completely healed in June 2016 and argues that Key Energy Services did not

12

produce sufficient medical evidence to establish this fact. The majority of the cases Mr. McCallon cites in support of this claim involved subsequent injuries to different areas of the body from the work-related injury and have no application here. *See, e.g., Ryan v. ESIF/Ryan Constr.*, 46,916 (La.App. 2 Cir. 4/4/12), 88 So.3d 719, *writ denied,* 12-1023 (La. 6/29/12), 92 So.3d 344.

Mr. McCallon points out that in *Buxton v. Iowa Police Department,* 09-520, p. 17 (La. 10/20/09), 23 So.3d 275, 286 (quoting *Haughton v. Fireman's Fund American Insurance Cos.*, 355 So.2d 927, 929 (La.1978)), the supreme court differentiated the effect of subsequent, intervening injuries that do not aggravate a work-related injury, explaining: "If an accident causes a disability from which a workman would have recovered except for further disability produced by a separate, intervening cause, there is no liability for compensation beyond the disability produced by the job connected accident." The supreme court also held in *Buxton*, 23 So.3d at 287, "that causation is not necessarily and exclusively a medical conclusion. It is usually the ultimate fact to be found by the court, based on all the credible evidence."

Though Mr. McCallon did not fill prescriptions for pain medication after August 2015 until April 19, 2016, he testified that the injury he suffered in the April 2016 accident caused him more back pain than he had before the accident and that he could not return to work. The evidence further establishes that if not for his April 2016 injury, Dr. McGuire would likely have discharged Mr. McCallon in June 2016. Furthermore, based on the nature of the L-3 fracture, the requirement that he wear a back brace, and the pain it causes him, we find it unlikely that Mr. McCallon would be able to participate in a functional capacity evaluation as Dr. McGuire recommended. Based on this evidence, we cannot say

the WCJ erred in finding that the April 2016 accident aggravated Mr. McCallon's work-related injury and that the forfeiture provision of La.R.S. 23:1102(B) applies.

Mr. McCallon next argues that he provided Key Energy Services notice of the April 2016 accident and that Key Energy Services' failure to protect its rights with regard to his third-party claim absolves him from having to obtain its consent to his settlement of the claim. He cites *Houston General Insurance Co. v. Commercial Union Insurance Co.*, 96-379 (La.App. 1 Cir. 11/8/96), 682 So.2d 1341, *writ denied*, 96-2950 (La. 1/31/97), 687 So.2d 409, in support of this claim. *Houston* dealt with an employer's suit against an insurer to recover benefits it had paid to its employee after the insurer had settled with the employee. The employee had provided the employer notice of his lawsuit, but the employer failed to intervene or file a separate suit to protect its interests. As a result, the court denied the employer's claim against the tortfeasor. In *Houston*, the employer had already obtained a judgment against its employee for the full amount of the employee's benefits when it filed suit against the third-party. Therefore, *Houston* shows that though Mr. McCallon had given Key Energy Services notice of the April 2016 accident, he also had an obligation to obtain Key Energy Services' consent before settling his claim arising from the accident.

Mr. McCallon next argues that the WCJ erred holding that he forfeited all benefits. This holding is contrary to La.R.S. 23:1102(B), which specifically provides that only future benefits are forfeited. Accordingly, we reverse the judgment with respect to this holding.

Mr. McCallon further argues that forfeiture applies only to compensation that becomes due after the date of the compromise, citing *Bolton v. Tulane University*, 99-970 (La.App. 4 Cir. 3/1/00), 755 So.2d 1003, *writs granted,* 00-922,

14

00-932 (La. 5/26/00), 762 So.2d 626, 762 So.2d 627, respectively; *Faught v. Ryder/P\*I\*E Nationwide, Inc.*, 543 So.2d 918, (La.App. 1 Cir.), *writ denied*, 545 So.2d 1040 (La.1989). He also asserts that to preserve his right to future benefits, he is only required to pay Key Energy Services fifty percent of his settlement, $12,500 of $25,000. Because Key Energy Services has not paid him any compensation benefits, Mr. McCallon proposes that this $12,500 should be applied against the past due amounts Key Energy Services owes him and that Key Energy Services should be ordered to pay him the benefits that exceed this amount.

In *Bolton*, 755 So.2d 1003, and *Faught*, 543 So.2d 918, the employees' work-related injuries were caused by the third parties with whom they settled claims. The employers had not paid the employees any benefits when the employees settled their claims, and the courts held that future compensation means compensation that becomes payable after the compromise. *Id.*

In *Jeansonne v. American Native Construction*, 97-1228, p. 11 (La.App. 3 Cir. 3/6/98), 710 So.2d 306, 312, this court disagreed with the courts' holdings in *Bolton* and *Faught*, explaining:

> In *Triche v. Regional Elec. & Const., Inc.,* 95-0105 (La.App. 1 Cir. 10/6/95); 671 So.2d 425, the first circuit was faced with a situation wherein an employee settled with a third party without obtaining the written approval of his employer or the employer's workers' compensation carrier. Unlike the case *sub judice*, that employer failed to pay his employee any benefits. The first circuit concluded, even where the employer has not paid compensation benefits prior to settlement, "the employer is entitled to a dollar for dollar credit against the full amount paid in compromise, less attorney[] fees and costs paid by the employee in prosecution of the third party claim." *Id.* at p. 10; 433. We find this reasoning persuasive and conclude that this interpretation of the statute is correct.

Mr. McCallon asserts that to preserve his right to future benefits, he need only pay Key Energy Services $12,500 of his $25,000 settlement. *Triche*, 671

So.2d 425, and *Jeansonne*, 710 So.2d 306, addressed this issue; however, in those cases, the employees' work-related injuries were caused by the third parties with whom the employees settled. Therefore, the employers and the third parties were each responsible for 100% of the employees' benefits. That is not the case here: Key Energy Services alone is responsible for Mr. McCallon's benefits that accrued before April 16, 2016. For this reason, we agree with Mr. MCallon that $12,500 should be applied against the past-due amounts Key Energy Services owes him. Accordingly, if the total of his benefits that accrued before April 16, 2016, exceeds the total of the $12,500 credit and his short-term disability benefits, Key Energy Services owes Mr. McCallon the balance. For any benefits due after April 16, 2016, Key Energy Services is entitled to a dollar for dollar credit against the remaining $12,500 of the settlement before it must pay Mr. McCallon additional benefits.

### *Payment of Medical Bills*

Key Energy Services next argues that the hearing officer erred in ordering it to pay all medical bills that Mr. McCallon incurred as a result of his February 3, 2015 accident in accordance with the fee schedule established by the State of Louisiana instead of limiting reimbursement to $750 per provider for failure to obtain prior consent. *See* La.R.S. 23:1142. Mr. McCallon cites La.R.S. 23:1142(E) in support of the WCJ's holding. Subsection E provides an exception to the general rule set forth therein, stating that when "the payor has denied that the employee's injury is compensable under this Chapter, then no approval from the payor is required prior to the provision of any diagnostic testing or treatment for that injury." Jurisprudence has held that the statutory cap does not apply in these situations. *See Daniel v. Point To Point Directional Drilling, Inc.*, 13-1407

16

(La.App. 3 Cir. 5/7/14), 139 So.3d 613, *writ denied*, 14-1165 (La. 9/19/14), 149 So.3d 245; *Carradine v. Regis Corp.*, 10-529 (La.App. 3 Cir. 11/3/10), 52 So.3d 181. In *Carradine*, 52 So.3d at 193, we observed that no employer is "automatically deprived of the opportunity to take advantage of the statutory cap created in La.R.S. 23:1142(B)[,]" rather each employer has the option of disputing the compensability or limiting its liability under the statutory cap.

Key Energy Services contends that the supreme court's holding in *Church Mutual Insurance Co. v. Dardar*, 13-2351 (La. 5/7/14), 145 So.3d 271, changed the application of this provision when medical providers fail to follow statutory requirements for approval of medical procedures. *Dow v. Chalmette Restaurant, Ltd.*, 15-336, p. 11 (La.App. 4 Cir. 5/18/16), 193 So.3d 1222, 1229, addressed this issue, explaining: "The denial of a request for medical treatment on the grounds that the injury is 'non-compensable' is not governed by La.R.S. 23:1203.1" because the form used to submit an appeal to the medical director provides, "'[d]isputes relating to compensability and/or causation are not addressed by the medical director.'" Accordingly, we find *Dardar* does not affect the WCJ's holding.

***Credit for Medical Expenses Paid by Blue Cross Blue Shield***

In its last assignment of error, Key Energy Services argues that the WCJ erred in not giving it a credit for medical bills paid by Blue Cross Blue Shield, Mr. McCallon's health insurance provider, as provided in La.R.S. 23:1212(A). This provision states, in pertinent part: "payment by any person or entity, other than a direct payment by the employee, a relative or friend of the employee . . . of medical expenses that are owed under this Chapter, shall extinguish the claim against the employer or insurer for those medical expenses." *Id*.

17

Courts have held that, "the employer must plead its offset and prove it with evidence showing that a payment of a certain amount of workers' compensation claimant's medical expenses was made by a person other than claimant, a relative or friend of the claimant." *Feingerts v. Am. Cas. Co. of Reading*, 09-1209, p. 14 (La.App. 4 Cir. 3/10/10), 34 So.3d 358, 367. *See also Alford v. Acadian Ambulance Serv., Inc.,* 96-639 (La.App. 3 Cir. 11/6/96), 682 So.2d 942. In its answer, Key Energy Services asserted a claim for offset of medical expenses in accordance with La.R.S. 23:1212, but it did not prove the amount of offset it is due at trial. Therefore, the WCJ denied its claim.

*Mangiaracina v. Avis Budget Group, Inc.*, 16-211 (La.App. 5 Cir. 9/22/16), 202 So.3d 171, affirmed the WCJ's holding that the payment of medical expenses by the employee's health insurer extinguished the employee's claim for those expenses, citing *Olivier v. City of Eunice*, 11-1054 (La.App. 3 Cir. 6/6/12), 92 So.3d 630, *writ denied*, 12-1570 (La. 10/12/12), 98 So.3d 874. In *Olivier*, this court held that a WCJ erred in awarding an employee the reimbursement of medical expenses paid by his health insurer, reasoning that La.R.S. 23:1212 was enacted to prevent employees from receiving a windfall from their employers when their health insurer had paid the expenses. We further noted that under La.R.S. 23:1205(B), health insurers have a right of 100% reimbursement against employers and their workers' compensation insurers for medical bills they pay in conjunction with an employee's compensation claim. *Olivier*, 92 So.3d 630.

A review of the medical bills in the record reveals that this evidence is insufficient to allow a calculation of the appropriate offset amount. One invoice indicates insurance payments were estimated, but no payment is reflected. Another invoice shows deductions against the running balance of charges; however, the

18

deductions are not identified as payments, adjustments, or write-offs. Three other invoices indicate that Mr. McCallon personally paid all or a portion of those medical expenses. Accordingly, we remand this issue to the trial court for the parties to establish the offset to which Key Energy Services is entitled and the medical expenses it owes to Mr. McCallon. *See Fernandez v. Hand Constr., LLC*, 15-615 (La.App. 4 Cir. 5/16/16), 194 So.3d 1149.

*Penalties and Attorney Fees*

Mr. McCallon urges that the WCJ erred in failing to award penalties and attorney fees for Key Energy Services' failure to reasonably controvert his entitlement to indemnity and medical benefits. We agree. As discussed above, Key Energy Services' denial of Mr. McCallon's claims is contrary to well-established jurisprudence, and the single case it cites in support of its position is clearly inapposite to the facts herein.

Louisiana Revised Statutes 23:1201(F) governs the assessment of penalties and award of attorney fees for an employer's failure to pay benefits. This provision does not apply if the employer reasonably controverts the claim or if nonpayment results from conditions over which the employer had no control. La.R.S. 23:1201(F)(2).

Pursuant to La.R.S. 23:1201(F), we award Mr. McCallon $4,000 in penalties representing $2,000 for past indemnity benefits and $2,000 for past medical benefits. Additionally, we award him $12,000 in attorney fees for work performed before the WCJ and this court.

## DISPOSITION

For the reasons discussed herein, the WCJ's judgment is reversed to the extent that it holds that Michael McCallon forfeited compensation benefits before

19

June 21, 2016; it is amended to provide that Michael McCallon is entitled to reserve his right to future compensation as provided by La.R.S. 23:1102(B); it is also amended to award Michael McCallon $4,000 in penalties and $12,000 in attorney fees; and the matter is remanded to the trial court for calculation of the offset due Key Energy Services, LLC. for medical expenses paid on behalf of Michael McCallon by his health insurer. The judgment is affirmed in all other respects. All costs are assessed to Key Energy Services, LLC.

**REVERSED IN PART; AMENDED IN PART; AFFIRMED AS AMENDED; AND REMANDED WITH INSTRUCTIONS.**